AO 120 (Rev. 08/10)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____Middle District of Florida_____ on the following

✖ Trademarks or ☐ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:25-cv-03053-TPB-NHA | DATE FILED<br>11/06/2025 | U.S. DISTRICT COURT<br>Middle District of Florida | |
|---|---|---|---|
| PLAINTIFF<br><br>The Trump Organization LLC et al | | DEFENDANT<br><br>The Individuals, Corporations, Limited Liability Companies,<br><br>Partnerships, Unincorporated Associations Identified on Schedule A | |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
|---|---|---|---|
| 1    See Attached Complaint | | | |

| CLERK<br>ELIZABETH M. WARREN | (BY) DEPUTY CLERK<br>Julissa Soto | DATE<br>11/12/2025 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE TRUMP ORGANIZATION
LLC, DTTM OPERATIONS
LLC, and CIC OPERATIONS LLC,

    *Plaintiffs*,

    v.

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY
COMPANIES,
PARTNERSHIPS, and
UNINCORPORATED
ASSOCIATIONS
IDENTIFIED ON
SCHEDULE A,

    *Defendants*.

_____/

**Case No. 8:25-cv-**

**Temporary Injunctive
Relief Requested**

**Preliminary Injunctive
Relief Requested**

**Permanent Injunctive
Relief Requested**

**Monetary
Relief Requested**

## COMPLAINT FOR TEMPORARY INJUNCTIVE, PRELIMINARY INJUNCTIVE, PERMANENT INJUNCTIVE, AND MONETARY RELIEF

Plaintiffs, The Trump Organization LLC ("Trump Organization"), DTTM Operations LLC ("DTTM"), and CIC Operations LLC ("CIC") (together, "Plaintiffs"), allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

## INTRODUCTION

1.    Defendants are online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks.    These trademarks include U.S. Trademark Registration Nos. 5,020,556, 5,885,602, and 5,921,166 for "MAKE AMERICA GREAT AGAIN" (the "MAGA Trademarks") and U.S. Trademark Registration Nos. 4,276,258, 4,332,755, 5,080,397, and 7,758,981 for "TRUMP" (the "TRUMP Trademarks") (collectively, "Plaintiffs' Trademarks").

2.    The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for Plaintiffs' Trademarks are attached here as **Exhibit 1**.

3.    Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing on at least a portion of Plaintiffs' Trademarks (the "Counterfeit Products").  By selling Counterfeit Products that

---

[1] Plaintiffs intend to file a Motion to Seal Schedule A.

purport to be genuine and authorized products using the MAGA Trademarks (the "MAGA Products") and/or using the TRUMP Trademarks (the "TRUMP Products") (together, "Plaintiffs' Products"), Defendants cause confusion and deception in the marketplace.

4.     Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, and Wish (collectively, the "Marketplace Platforms").

5.     Defendants design the online marketplace accounts to appear to be selling genuine versions of Plaintiffs' Products while selling inferior imitations of such products.

6.     Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.     Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation.   Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' Trademarks, as well as to protect

unknowing consumers from purchasing Counterfeit Products.

8.     As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill.  They therefore seek temporary, preliminary, and permanent injunctive relief and monetary relief.

## SUBJECT MATTER JURISDICTION

9.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims here under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and 28 U.S.C. §§ 1331, 1338(a)–(b).

10.     This Court has jurisdiction over the state-law claim in this action that arise under the laws of the State of Florida under 28 U.S.C. § 1367(a). The state-law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

11.     Personal jurisdiction exists over Defendants in this Judicial District under Florida Statutes § 48.193(1)(a)(1)–(2), or, in the alternative, Federal Rule Of Civil Procedure 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail

themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District. For example:

      a.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, by operating virtual accounts on the Marketplace Platforms ("Defendant Internet Stores") as well as any and all yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these Defendant Internet Stores—and specifically through the one or more online listing pages for Counterfeit Products publicly accessible and viewable to consumers on each Defendant Internet Store—Defendants are able to advertise, distribute, offer for sale, and/or sell said Counterfeit Products to consumers in the United States—including in Florida (and more particularly, in this Judicial District). Defendants use these infringing business activities–

–placing orders for, receiving invoices for, and/or otherwise purchasing Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District)—as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

  b. Upon information and belief, Defendants have transacted business with consumers in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

12. Venue is proper in this Court under at least 28 U.S.C. § 1391(b)(2) and Middle District of Florida Local Rule 1.04(b) because Defendants, who have committed acts of trademark infringement in this Judicial District and Division, do substantial business in the Judicial District and Division.

## **THE PLAINTIFFS**

13. Plaintiff Trump Organization is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Florida.

14. Plaintiff DTTM is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

15. Plaintiff CIC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

6

16.    The Trump Organization is Plaintiffs' corporate office and is responsible for the enforcement of the federally registered trademarks owned by DTTM and CIC (attached as Exhibit 1), which were duly and legally issued by the U.S. Patent and Trademark Office, including but not limited to:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,020,556 | MAKE AMERICA GREAT AGAIN | August 16, 2016 | IC 016.<br>G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; printed publications, namely, pamphlets providing information regarding Donald J. Trump as a political candidate; posters; pens<br><br>IC 025.<br>G&S: Clothing, namely, sweatshirts, T-shirts, tank tops, long sleeve shirts; headwear, namely, caps and hats; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts<br><br>IC 026.<br>G&S: Campaign buttons |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,885,602 | MAKE AMERICA GREAT AGAIN | October 15, 2019 | IC 018. <br> G&S: All purpose sport bags; Backpacks; Duffel bags; Knapsacks; Tote bags; Umbrellas |
| 5,921,166 | MAKE AMERICA GREAT AGAIN | November 26, 2019 | IC 018. <br> G&S: All-purpose athletic bags; All-purpose carrying bags; Backpacks; Beach bags; Book bags; Carry-all bags; Change purses; Clutches; Coin purses; Dog apparel; Duffel bags; Garment bags for travel; Handbags; Key cases; Pet clothing; Purses and wallets; School bags; Small backpacks; Travel bags <br><br> IC 025. <br> G&S: Footwear; Hats; Jackets; Pants; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Sweat shirts; Swim wear |
| 4,276,258 | TRUMP | January 15, 2013 | IC 016. <br> G&S: Desk accessories, namely, desk pads, paper weights, business card holders. <br><br> IC 021. <br> G&S: glasses, cups, bowls, decanters; beverage glassware. |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | G&S: greeting cards, posters and stationery paper. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens.<br><br>IC 025. G&S: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts.<br><br>IC 026. G&S: Campaign buttons. |
| 7,758,981 | TRUMP | April 15, 2025 | IC 025. G&S: Sneakers. |

## THE DEFENDANTS

17.    Defendants are individuals and business entities who, upon information and belief, reside in Asia.

18.    Defendants operate as merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE PLAINTIFFS' PRODUCTS

19.    From the date of the creation of the first of Plaintiffs' Products to the present, the Trump Organization (and for the TRUMP Products, its authorized licensees for those products) are and have been the sole and official sources of genuine versions of Plaintiffs' Products in the United States and Florida.  Plaintiffs' Products intersect a wide range of sectors, including various consumer products, real estate, hospitality, golf, entertainment, and digital-blockchain-based assets. Plaintiffs' promotional efforts for Plaintiffs' Products include, for example, but not limitation, substantial marketing and advertising on the internet, such as through the Trump Organization's official website (www.trump.com), the Trump Organization's official online store (www.trumpstore.com), and through television, social media, and other platforms.





### 45-47 MAGA Hat
$55.00

- 1 + **ADD TO CART**

The classic high crown red hat that has made waves across the world just got a time-stamp update. Celebrating the past while looking hopefully forward to the future, pick up the greatest hat of all time and make America great again.

- American flag at left temple
- 45/47 embroidery at right temple
- Adjustable closure
- One size fits all
- Made in America

   





### Ladies MAGA Jersey Tee
$50.00

Color

Size    S  M  L  XL

- 1 + **ADD TO CART**

Show your patriotic spirit with our Make America Great Again Tee. A timeless tribute to liberty and American pride. Made in the USA and designed with bold, vibrant colors that stand out season after season.

- Made in America
- 100% Ring-Spun Cotton Blend
- Double-needle stitched sleeves and bottom hem
- Make America Great Again Logo



   



11



*Exemplary Images of Plaintiffs' Products Incorporating Plaintiffs'
Trademarks*

20.     For over forty years, the Trump Organization has licensed rights to its intellectual property, including the TRUMP Trademarks, to various third parties for the sale of numerous products that incorporated that intellectual property.    The Trump Organization also sells numerous products that incorporate the MAGA Trademarks.    In addition, Plaintiffs' Trademarks are

and have been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the Plaintiffs' Trademarks in the industry and to consumers.

21.    The certificates of registration for Plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks under 15 U.S.C. § 1057(b).

22.    Each of Plaintiffs' Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1)–(2)(A), and each of those specific marks has been continuously used and never abandoned.

23.    Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Plaintiffs' Trademarks. As a result, products bearing Plaintiffs' Trademarks have become enormously popular around the world, driven by Plaintiffs' arduous quality standards and innovative business strategies. Plaintiffs' Products are exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

## <u>THE DEFENDANTS' UNLAWFUL CONDUCT</u>

24.    The success of Plaintiffs' Products has resulted in significant counterfeiting.  Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms.  These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and Division and throughout the United States.

25.    Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, according to an intellectual property right seizure statistics report issued by U.S. Customs & Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was $5.4 billion—an increase of 415% over the past five years.[2]  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue each year.[3]

26.    Defendants facilitate sales by designing the Defendant Internet

---

[2] U.S. Customs & Border Prot., *Intellectual Property Rights Seizure Statistics: Fiscal Year 2024* (Pub. No. 3964-0125, 2025), https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf.

[3] Nat'l Ass'n of Mfrs., *Countering Counterfeits: The Real Threat of Fake Products* (July 2020), https://www.nam.org/wp-content/uploads/2020/07/CounteringCounterfeits.vF_.pdf.

Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine versions of Plaintiffs' Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

27.    Plaintiffs have not licensed or authorized Defendants to use Plaintiffs' Trademarks, and none of the Defendants is an authorized retailer of the genuine versions of Plaintiffs' Products.

28.    Defendants also deceive unknowing consumers by using without authorization Plaintiffs' Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Plaintiffs' Products. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which Defendants could continue to sell Counterfeit Products into this Judicial District and Division.

29.    On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their Defendant

Internet Stores with incomplete information, randomly typed letters, or omitted cities or states.

30.    Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

31.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective seller identities.

32.    In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

33.    The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume

sales discounts, and/or the use of the same text and images.

34.    In addition, Defendants in this case and defendants in similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.

35.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by law enforcement and other regulatory agencies.  Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite Plaintiffs' enforcement efforts.

36.    Defendants also maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside this Court's jurisdiction.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside this Court's jurisdiction.

37.    Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and Florida over the internet.  Below are examples of Counterfeit Products offered for sale through the Defendants' online storefronts:

| Genuine Plaintiffs' Products | Counterfeit Products |
|---|---|
|  |  |










38.    Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District and Division) and, on information and belief, each Defendant has offered to sell counterfeit versions of Plaintiffs' Products into the United States, including Florida (in this Judicial

District and Division).

39.    Defendants' use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

40.    Prior to and contemporaneous with their counterfeiting actions alleged here, Defendants had knowledge of Plaintiffs' ownership of Plaintiffs' Trademarks, of the fame and incalculable goodwill associated therewith, and of the popularity and success of Plaintiffs' Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

41.    Defendants have been engaging in the illegal counterfeiting actions, as alleged here, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and Plaintiffs' Products.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114 *et seq.*)

42.    Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

43.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods.  Plaintiffs' Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiffs' products provided under Plaintiffs' Trademarks.

44.    Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with Plaintiffs' Trademarks without Plaintiffs' permission.

45.    Plaintiff CIC is the registered owner of the MAGA Trademarks. Plaintiff DTTM is the registered owner of the TRUMP Trademarks.  Plaintiffs are the official source of Plaintiffs' Products.  The U.S. registrations for Plaintiffs' Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks.  Defendants' willful, intentional, and unauthorized use

23

of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

46.    As just two examples, Defendants deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:





*Exemplars of Counterfeit Products Sold by Defendants Infringing on Plaintiffs' Trademarks*

47.    Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

48.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful manufacture, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

49.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known MAGA and TRUMP Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) *et seq.*)

50.    Plaintiffs    repeat    and    incorporate    by    reference    here    their

allegations contained in paragraphs 1–41 of this Complaint.

51.    Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

52.    By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

53.    Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

54.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

**THIRD CAUSE OF ACTION**
**COMMON LAW UNFAIR COMPETITION**

55.    Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

56.    Plaintiffs have not licensed or authorized Defendants to use

Plaintiffs' Trademarks, and none of the Defendants is an authorized retailer of genuine versions of Plaintiffs' Products.

57.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' Trademarks.

58.    Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs in violation of Florida's common law of unfair competition.

59.    Defendants knew, or should have known, that their manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

60.    In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by (i) using the same or substantially similar payment and check-out methods on their websites to misdirect customers seeking Plaintiffs' Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the content, text, and/or meta data of the online

marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

61. On information and belief, Defendants' conduct is willful and intentional as Defendants try to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

62. Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

<div align="center">

**PRAYER FOR RELIEF**

</div>

Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

    a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a MAGA or TRUMP Product or is not authorized by

Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiffs' Products or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.    further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

e.    otherwise competing unfairly with Plaintiffs in any manner;

f.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' Trademarks, including Plaintiffs' Trademarks;

g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that

is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

      h.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiffs' Trademarks that is not a genuine version of Plaintiffs' Products or not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks.

2.    Entry of an Order that Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, Wish, and any other online marketplace account provider:

      a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

      b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

      c.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

      d.    deliver up and destroy all Counterfeit Products under 15 U.S.C. § 1118.

3.     That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts alleged here, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a)–(b).

4.     In the alternative, that Plaintiffs be awarded statutory damages under 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the Plaintiffs' Trademarks.

5.     That Plaintiffs be awarded their reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a)–(b); and

6.     Award any and all other relief that this Court deems just and proper.

Dated: November 6, 2025            Respectfully submitted,

By:  */s/ Jason Hilborn*
                                    —————————————————————
Katie Kavanaugh                    Jason Hilborn* (FBN 1008829)
(*pro hac vice* forthcoming)         *Lead Counsel
**Boies Schiller Flexner LLP**       **BOIES SCHILLER FLEXNER LLP**
2029 Century Park East,             401 East Las Olas Blvd.,
Suite 1520                          Suite 1200
Los Angeles, CA 90067              Fort Lauderdale, FL 33301
Telephone: (213) 629-9040          Telephone: (954) 356-0011
kkavanaugh@bsfllp.com              jhilborn@bsfllp.com

                                    *Attorneys for Plaintiffs*

# Exhibit 1

# United States of America

## United States Patent and Trademark Office

## MAKE AMERICA GREAT AGAIN

**Reg. No. 5,020,556**

**Registered Aug. 16, 2016**

**Int. Cl.: 16, 25, 26, 35, 36, 41, 45**

**Service Mark**

**Trademark**

**Principal Register**

DONALD J. TRUMP FOR PRESIDENT, INC. (VIRGINIA NON-PROFIT CORPORATION)
725 FIFTH AVENUE
NEW YORK, NY 10022

CLASS 16: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; printed publications, namely, pamphlets providing information regarding Donald J. Trump as a political candidate; posters; pens

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 25: Clothing, namely, sweatshirts, T-shirts, tank tops, long sleeve shirts; headwear, namely, caps and hats; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 26: Campaign buttons

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 35: Political campaign services, namely, promoting public awareness of Donald J. Trump as a candidate for public office; providing online information regarding political issues and the 2016 presidential election; retail and online retail store services in connection with campaign related goods; providing a website that features Donald J. Trump views on political issues

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 36: Political campaign services, namely, fundraising in the field of politics

FIRST USE 5-22-2015; IN COMMERCE 5-22-2015

CLASS 41: On-line journals, namely, blogs featuring information about Donald J. Trump, namely, as it relates to politics and political campaigning; providing a website featuring non-downloadable videos and photographs in the field of politics and political campaigning

FIRST USE 5-22-2015; IN COMMERCE 5-22-2015

CLASS 45: Online social networking services in the field of politics and political campaigning provided via a website

FIRST USE 4-22-2015; IN COMMERCE 4-22-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4773272

SER. NO. 86-724,115, FILED 08-13-2015



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

KAPIL KUMAR BHANOT, EXAMINING ATTORNEY

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

## MAKE AMERICA GREAT AGAIN

**Reg. No. 5,885,602**

**Registered Oct. 15, 2019**

**Int. Cl.: 18**

**Trademark**

**Principal Register**

DONALD J. TRUMP FOR PRESIDENT, INC.  (VIRGINIA NON-PROFIT CORPORATION)
725 Fifth Avenue
New York, NEW YORK 10022

CLASS 18: All purpose sport bags; Backpacks; Duffel bags; Knapsacks; Tote bags; Umbrellas

FIRST USE 8-6-2015; IN COMMERCE 8-6-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4773272

SER. NO. 86-724,213, FILED 08-13-2015



Director of the United States
Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at h** ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.



# United States of America
## United States Patent and Trademark Office

## MAKE AMERICA GREAT AGAIN

**Reg. No. 5,921,166**

**Registered Nov. 26, 2019**

**Int. Cl.: 18, 25**

**Trademark**

**Principal Register**

DONALD J. TRUMP FOR PRESIDENT, INC.  (VIRGINIA NON-PROFIT CORPORATION)
725 Fifth Avenue
New York, NEW YORK 10022

CLASS 18: All-purpose athletic bags; All-purpose carrying bags; Backpacks; Beach bags; Book bags; Carry-all bags; Change purses; Clutches; Coin purses; Dog apparel; Duffel bags; Garment bags for travel; Handbags; Key cases; Pet clothing; Purses and wallets; School bags; Small backpacks; Travel bags

FIRST USE 8-6-2015; IN COMMERCE 8-6-2015

CLASS 25: Footwear; Hats; Jackets; Pants; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Sweat shirts; Swim wear

FIRST USE 8-6-2015; IN COMMERCE 8-6-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 86-716,074, FILED 08-05-2015



Director of the United States
Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at h** ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.



# TRUMP

**Reg. No. 4,276,258**
DONALD J. TRUMP (UNITED STATES INDIVIDUAL)
725 FIFTH AVENUE
**Registered Jan. 15, 2013** NEW YORK, NY 10022

**Int. Cls.: 16, 19, and 21**
FOR: DESK ACCESSORIES, NAMELY, DESK PADS, PAPER WEIGHTS, BUSINESS CARD HOLDERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

**TRADEMARK**
FIRST USE 2-17-2010; IN COMMERCE 2-17-2010.

**PRINCIPAL REGISTER**
FOR: WOOD FLOORING AND FLOOR TILES, WOOD MOLDINGS, WOOD PANELING, WOOD SIDING, WALL PANELS AND DOORS NOT OF METAL, IN CLASS 19 (U.S. CLS. 1, 12, 33 AND 50).

FIRST USE 10-25-2012; IN COMMERCE 10-25-2012.

FOR: GLASSES, CUPS, BOWLS, DECANTERS; BEVERAGE GLASSWARE, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 10-14-2010; IN COMMERCE 10-14-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,655,340, 3,712,766, AND OTHERS.

SN 85-179,714, FILED 11-18-2010.

HOWARD B. LEVINE, EXAMINING ATTORNEY

Director of the United States Patent and Trademark Office

<div style="border:1px solid black">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

<div style="border:1px solid black">

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

</div>

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.



# United States of America
## United States Patent and Trademark Office

# TRUMP

**Reg. No. 4,332,755**

**Registered May 7, 2013**

**Int. Cl.: 16**

**TRADEMARK**

**PRINCIPAL REGISTER**

TRUMP, DONALD J. (UNITED STATES INDIVIDUAL)
725 FIFTH AVENUE
NEW YORK, NY 10022

FOR: GREETING CARDS, POSTERS AND STATIONERY PAPER, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 3-0-2001; IN COMMERCE 10-0-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,245,415, 3,655,340, AND OTHERS.

SN 85-544,942, FILED 2-16-2012.

DEIRDRE ROBERTSON, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# TRUMP

**Reg. No. 5,080,397**

**Registered Nov. 15, 2016**

**Int. Cl.: 16, 25, 26, 35, 36, 41, 45**

**Service Mark**

**Trademark**

**Principal Register**

DTTM OPERATIONS LLC (DELAWARE LIMITED LIABILITY COMPANY)
725 FIFTH AVENUE
NEW YORK, NY 10022

CLASS 16: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 25: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 26: Campaign buttons

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 35: Providing online information regarding political issues and the 2016 presidential election; retail store and online retail store services featuring political campaign goods

FIRST USE 4-12-2015; IN COMMERCE 4-12-2015

CLASS 36: Political campaign services, namely, fundraising in the field of politics

FIRST USE 5-22-2015; IN COMMERCE 5-22-2015

CLASS 41: Providing a website featuring non-downloadable videos and photographs in the field of politics and political campaigning

FIRST USE 5-22-2015; IN COMMERCE 5-22-2015

CLASS 45: Online social networking services in the field of politics and political campaigning provided via a website

FIRST USE 4-22-2015; IN COMMERCE 4-22-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3687022, 2431539, 3391095

The name(s), portrait(s), and/or signature(s) shown in the mark identifies Donald J. Trump, a living individual whose consent is of record.



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

SER. NO. 86-724,574, FILED 08-13-2015
KAPIL KUMAR BHANOT, EXAMINING ATTORNEY

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- **First Filing Deadline:** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- **Second Filing Deadline:** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at h** ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# TRUMP

**Reg. No. 7,758,981**

**Registered Apr. 15, 2025**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

DTTM OPERATIONS, LLC  (Delaware LIMITED LIABILITY COMPANY)
725 5th Avenue
NEW YORK, NEW YORK 10022

CLASS 25: Sneakers

FIRST USE 2-17-2024; IN COMMERCE 2-17-2024

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3728787, 5080397, 3574187

The name(s), portrait(s), and/or signature(s) shown in the mark identifies Donald J. Trump, a living individual whose consent is of record.

SER. NO. 98-619,985, FILED 06-26-2024



Acting Director of the United States Patent and Trademark Office



**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

JS 44 (Rev. 03/24)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The Trump Organization LLC, DTTM Operations LLC, and CIC Operations LLC | The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Unknown
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Boies Schiller Flexner LLP; 401 E. Las Olas Blvd, Suite 1200, Ft Lauderdale, FL 33301; 954-356-0011

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [x] 840 Trademark | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S.C. § 1114, 1125

Brief description of cause:
Action against online counterfeiters who are selling and/or offering for sale products in connection with Plaintiffs' trademarks

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $  To be decided

CHECK YES only if demanded in complaint:
JURY DEMAND:    [ ] Yes   [x] No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*

JUDGE    Thomas P. Barber    DOCKET NUMBER    8:25-cv-01962-TPB-AAS

DATE    11/06/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jason Hilborn

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title <u>28 U.S.C. Section 1404(a)</u>. Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title <u>28 U.S.C. Section 1407</u>.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.