# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE TRUMP ORGANIZATION
LLC, DTTM OPERATIONS
LLC, and CIC OPERATIONS LLC,

    *Plaintiffs*,

    v.

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY
COMPANIES,
PARTNERSHIPS, and
UNINCORPORATED
ASSOCIATIONS
IDENTIFIED ON
SCHEDULE A,

    *Defendants*.

_____/

**Case No. 8:25-cv-**

**Temporary Injunctive
Relief Requested**

**Preliminary Injunctive
Relief Requested**

**Permanent Injunctive
Relief Requested**

**Monetary
Relief Requested**

## COMPLAINT FOR TEMPORARY INJUNCTIVE, PRELIMINARY INJUNCTIVE, PERMANENT INJUNCTIVE, AND MONETARY RELIEF

Plaintiffs, The Trump Organization LLC ("Trump Organization"), DTTM Operations LLC ("DTTM"), and CIC Operations LLC ("CIC") (together, "Plaintiffs"), allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

## **INTRODUCTION**

1.      Defendants are online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks.  These trademarks include U.S. Trademark Registration Nos. 5,020,556, 5,885,602, and 5,921,166 for "MAKE AMERICA GREAT AGAIN" (the "MAGA Trademarks") and U.S. Trademark Registration Nos. 4,276,258, 4,332,755, 5,080,397, and 7,758,981 for "TRUMP" (the "TRUMP Trademarks") (collectively, "Plaintiffs' Trademarks").

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for Plaintiffs' Trademarks are attached here as **Exhibit 1**.

3.      Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing on at least a portion of Plaintiffs' Trademarks (the "Counterfeit Products").  By selling Counterfeit Products that

---

[1] Plaintiffs intend to file a Motion to Seal Schedule A.

purport to be genuine and authorized products using the MAGA Trademarks (the "MAGA Products") and/or using the TRUMP Trademarks (the "TRUMP Products") (together, "Plaintiffs' Products"), Defendants cause confusion and deception in the marketplace.

4.    Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, and Wish (collectively, the "Marketplace Platforms").

5.    Defendants design the online marketplace accounts to appear to be selling genuine versions of Plaintiffs' Products while selling inferior imitations of such products.

6.    Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.    Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation.  Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' Trademarks, as well as to protect

unknowing consumers from purchasing Counterfeit Products.

8.    As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill.  They therefore seek temporary, preliminary, and permanent injunctive relief and monetary relief.

## SUBJECT MATTER JURISDICTION

9.    This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims here under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and 28 U.S.C. §§ 1331, 1338(a)–(b).

10.    This Court has jurisdiction over the state-law claim in this action that arise under the laws of the State of Florida under 28 U.S.C. § 1367(a). The state-law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

11.    Personal jurisdiction exists over Defendants in this Judicial District under Florida Statutes § 48.193(1)(a)(1)–(2), or, in the alternative, Federal Rule Of Civil Procedure 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail

4

themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District. For example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, by operating virtual accounts on the Marketplace Platforms ("Defendant Internet Stores") as well as any and all yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these Defendant Internet Stores—and specifically through the one or more online listing pages for Counterfeit Products publicly accessible and viewable to consumers on each Defendant Internet Store—Defendants are able to advertise, distribute, offer for sale, and/or sell said Counterfeit Products to consumers in the United States—including in Florida (and more particularly, in this Judicial District). Defendants use these infringing business activities–

–placing orders for, receiving invoices for, and/or otherwise purchasing Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District)—as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

b.      Upon information and belief, Defendants have transacted business with consumers in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

12.   Venue is proper in this Court under at least 28 U.S.C. § 1391(b)(2) and Middle District of Florida Local Rule 1.04(b) because Defendants, who have committed acts of trademark infringement in this Judicial District and Division, do substantial business in the Judicial District and Division.

## THE PLAINTIFFS

13.   Plaintiff Trump Organization is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Florida.

14.   Plaintiff DTTM is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

15.   Plaintiff CIC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

16.     The Trump Organization is Plaintiffs' corporate office and is responsible for the enforcement of the federally registered trademarks owned by DTTM and CIC (attached as Exhibit 1), which were duly and legally issued by the U.S. Patent and Trademark Office, including but not limited to:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,020,556 | MAKE AMERICA GREAT AGAIN | August 16, 2016 | IC 016. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; printed publications, namely, pamphlets providing information regarding Donald J. Trump as a political candidate; posters; pens<br><br>IC 025. G&S: Clothing, namely, sweatshirts, T-shirts, tank tops, long sleeve shirts; headwear, namely, caps and hats; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts<br><br>IC 026. G&S: Campaign buttons |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,885,602 | MAKE AMERICA GREAT AGAIN | October 15, 2019 | IC 018.<br>G&S: All purpose sport bags; Backpacks; Duffel bags; Knapsacks; Tote bags; Umbrellas |
| 5,921,166 | MAKE AMERICA GREAT AGAIN | November 26, 2019 | IC 018.<br>G&S: All-purpose athletic bags; All-purpose carrying bags; Backpacks; Beach bags; Book bags; Carry-all bags; Change purses; Clutches; Coin purses; Dog apparel; Duffel bags; Garment bags for travel; Handbags; Key cases; Pet clothing; Purses and wallets; School bags; Small backpacks; Travel bags<br><br>IC 025.<br>G&S: Footwear; Hats; Jackets; Pants; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Sweat shirts; Swim wear |
| 4,276,258 | TRUMP | January 15, 2013 | IC 016.<br>G&S: Desk accessories, namely, desk pads, paper weights, business card holders.<br><br>IC 021.<br>G&S: glasses, cups, bowls, decanters; beverage glassware. |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | G&S: greeting cards, posters and stationery paper. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016.<br>G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens.<br><br>IC 025.<br>G&S: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts.<br><br>IC 026.<br>G&S: Campaign buttons. |
| 7,758,981 | TRUMP | April 15, 2025 | IC 025.<br>G&S: Sneakers. |

## THE DEFENDANTS

17.     Defendants are individuals and business entities who, upon information and belief, reside in Asia.

18.     Defendants operate as merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE PLAINTIFFS' PRODUCTS

19.     From the date of the creation of the first of Plaintiffs' Products to the present, the Trump Organization (and for the TRUMP Products, its authorized licensees for those products) are and have been the sole and official sources of genuine versions of Plaintiffs' Products in the United States and Florida.   Plaintiffs' Products intersect a wide range of sectors, including various consumer products, real estate, hospitality, golf, entertainment, and digital-blockchain-based assets. Plaintiffs' promotional efforts for Plaintiffs' Products include, for example, but not limitation, substantial marketing and advertising on the internet, such as through the Trump Organization's official website (www.trump.com), the Trump Organization's official online store (www.trumpstore.com), and through television, social media, and other platforms.




### 45-47 MAGA Hat

$55.00

− 1 + **ADD TO CART**

The classic high crown red hat that has made waves across the world just got a time-stamp update. Celebrating the past while looking hopefully forward to the future, pick up the greatest hat of all time and make America great again.

- American flag at left temple
- 45/47 embroidery at right temple
- Adjustable closure
- One size fits all
- Made in America

   




### Ladies MAGA Jersey Tee

$50.00



Color

Size       S   M   L   XL

− 1 + **ADD TO CART**

Show your patriotic spirit with our Make America Great Again Tee. A timeless tribute to liberty and American pride. Made in the USA and designed with bold, vibrant colors that stand out season after season.

- Made in America
- 100% Ring-Spun Cotton Blend
- Double-needle stitched sleeves and bottom hem
- Make America Great Again Logo

   


11



*Exemplary Images of Plaintiffs' Products Incorporating Plaintiffs' Trademarks*

20.    For over forty years, the Trump Organization has licensed rights to its intellectual property, including the TRUMP Trademarks, to various third parties for the sale of numerous products that incorporated that intellectual property.    The Trump Organization also sells numerous products that incorporate the MAGA Trademarks.  In addition, Plaintiffs' Trademarks are

and have been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the Plaintiffs' Trademarks in the industry and to consumers.

21.     The certificates of registration for Plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks under 15 U.S.C. § 1057(b).

22.     Each of Plaintiffs' Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1)–(2)(A), and each of those specific marks has been continuously used and never abandoned.

23.     Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Plaintiffs' Trademarks. As a result, products bearing Plaintiffs' Trademarks have become enormously popular around the world, driven by Plaintiffs' arduous quality standards and innovative business strategies. Plaintiffs' Products are exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

## THE DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of Plaintiffs' Products has resulted in significant counterfeiting.  Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms.  These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and Division and throughout the United States.

25.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, according to an intellectual property right seizure statistics report issued by U.S. Customs & Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was $5.4 billion—an increase of 415% over the past five years.[2]  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue each year.[3]

26.     Defendants facilitate sales by designing the Defendant Internet

---

[2] U.S. Customs & Border Prot., *Intellectual Property Rights Seizure Statistics: Fiscal Year 2024* (Pub. No. 3964-0125, 2025), https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf.

[3] Nat'l Ass'n of Mfrs., *Countering Counterfeits: The Real Threat of Fake Products* (July 2020), https://www.nam.org/wp-content/uploads/2020/07/CounteringCounterfeits.vF_.pdf.

Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine versions of Plaintiffs' Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

27. Plaintiffs have not licensed or authorized Defendants to use Plaintiffs' Trademarks, and none of the Defendants is an authorized retailer of the genuine versions of Plaintiffs' Products.

28. Defendants also deceive unknowing consumers by using without authorization Plaintiffs' Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Plaintiffs' Products. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which Defendants could continue to sell Counterfeit Products into this Judicial District and Division.

29. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their Defendant

Internet Stores with incomplete information, randomly typed letters, or omitted cities or states.

30.     Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

31.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective seller identities.

32.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

33.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume

sales discounts, and/or the use of the same text and images.

34.     In addition, Defendants in this case and defendants in similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.

35.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by law enforcement and other regulatory agencies.  Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite Plaintiffs' enforcement efforts.

36.     Defendants also maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside this Court's jurisdiction.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside this Court's jurisdiction.

37.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and Florida over the internet.  Below are examples of Counterfeit Products offered for sale through the Defendants' online storefronts:

| Genuine Plaintiffs' Products | Counterfeit Products |
|:---:|:---:|
|  |  |







38.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District and Division) and, on information and belief, each Defendant has offered to sell counterfeit versions of Plaintiffs' Products into the United States, including Florida (in this Judicial

District and Division).

39.   Defendants' use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

40.   Prior to and contemporaneous with their counterfeiting actions alleged here, Defendants had knowledge of Plaintiffs' ownership of Plaintiffs' Trademarks, of the fame and incalculable goodwill associated therewith, and of the popularity and success of Plaintiffs' Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

41.   Defendants have been engaging in the illegal counterfeiting actions, as alleged here, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and Plaintiffs' Products.

# FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114 *et seq.*)

42. Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

43. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. Plaintiffs' Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under Plaintiffs' Trademarks.

44. Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with Plaintiffs' Trademarks without Plaintiffs' permission.

45. Plaintiff CIC is the registered owner of the MAGA Trademarks. Plaintiff DTTM is the registered owner of the TRUMP Trademarks. Plaintiffs are the official source of Plaintiffs' Products. The U.S. registrations for Plaintiffs' Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional, and unauthorized use

of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

46.    As just two examples, Defendants deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:





*Exemplars of Counterfeit Products Sold by Defendants Infringing on Plaintiffs' Trademarks*

47.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

48.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful manufacture, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

49.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known MAGA and TRUMP Trademarks.

## SECOND CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN
**(15 U.S.C. § 1125(a) *et seq.*)**

50.     Plaintiffs repeat and incorporate by reference here their

allegations contained in paragraphs 1–41 of this Complaint.

51. Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

52. By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

53. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

54. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## THIRD CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

55. Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

56. Plaintiffs have not licensed or authorized Defendants to use

Plaintiffs' Trademarks, and none of the Defendants is an authorized retailer of genuine versions of Plaintiffs' Products.

57.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' Trademarks.

58.    Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs in violation of Florida's common law of unfair competition.

59.    Defendants knew, or should have known, that their manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

60.    In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by (i) using the same or substantially similar payment and check-out methods on their websites to misdirect customers seeking Plaintiffs' Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the content, text, and/or meta data of the online

marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

61.     On information and belief, Defendants' conduct is willful and intentional as Defendants try to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

62.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill.  Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

a.     using Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a MAGA or TRUMP Product or is not authorized by

Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

      b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiffs' Products or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

      c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

      d.    further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

      e.    otherwise competing unfairly with Plaintiffs in any manner;

      f.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' Trademarks, including Plaintiffs' Trademarks;

      g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that

is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

      h.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiffs' Trademarks that is not a genuine version of Plaintiffs' Products or not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks.

2.    Entry of an Order that Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, Wish, and any other online marketplace account provider:

      a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

      b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

      c.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

      d.    deliver up and destroy all Counterfeit Products under 15 U.S.C. § 1118.

3. That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts alleged here, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a)–(b).

4. In the alternative, that Plaintiffs be awarded statutory damages under 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the Plaintiffs' Trademarks.

5. That Plaintiffs be awarded their reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a)–(b); and

6. Award any and all other relief that this Court deems just and proper.

Dated: November 6, 2025                Respectfully submitted,

By: */s/ Jason Hilborn*

Katie Kavanaugh                        Jason Hilborn* (FBN 1008829)
(*pro hac vice* forthcoming)              *Lead Counsel*
**Boies Schiller Flexner LLP**         **Boies Schiller Flexner LLP**
2029 Century Park East,                 401 East Las Olas Blvd.,
Suite 1520                              Suite 1200
Los Angeles, CA 90067                   Fort Lauderdale, FL 33301
Telephone: (213) 629-9040              Telephone: (954) 356-0011
kkavanaugh@bsfllp.com                  jhilborn@bsfllp.com

*Attorneys for Plaintiffs*