## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
Case No. 8:25-cv-03053-TPB-NHA

THE TRUMP ORGANIZATION LLC,
DTTM OPERATIONS LLC, and
CIC OPERATIONS LLC,

Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, and UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

Defendants.

_____/

### ANSWER OF DEFENDANT DOE 88 Sherenzhuangliang (ID: 10002873476)

Defendant DOE 88 Sherenzhuangliang (ID: 10002873476) ("Defendant"),

by and through undersigned counsel, answers the Complaint as follows:

Plaintiffs, The Trump Organization LLC ("Trump Organization"),

DTTM Operations LLC ("DTTM"), and CIC Operations LLC ("CIC")

(together, "Plaintiffs"), allege as follows against the individuals,

corporations, limited liability companies, partnerships, and

unincorporated associations and foreign entities identified on Schedule

A (collectively, "Defendants"):

## INTRODUCTION

1.      Defendants are online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks. These trademarks include U.S. Trademark Registration Nos. 5,020,556, 5,885,602, and 5,921,166 for "MAKE AMERICA GREAT AGAIN" (the "MAGA Trademarks") and U.S. Trademark Registration Nos. 4,276,258, 4,332,755, 5,080,397, and 7,758,981 for "TRUMP" (the "TRUMP Trademarks") (collectively, "Plaintiffs' Trademarks").

Answer: Denied.

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for Plaintiffs' Trademarks are attached here as **Exhibit 1**.

Answer: Lack of sufficient knowledge, thus denied.

3.      Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing on at least a portion of Plaintiffs' Trademarks (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the MAGA Trademarks (the "MAGA

Products") and/or using the TRUMP Trademarks (the "TRUMP Products") (together, "Plaintiffs' Products"), Defendants cause confusion and deception in the marketplace.

Answer: Lack of sufficient knowledge, thus denied.

4.    Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, and Wish (collectively, the "Marketplace Platforms").

Answer: Denied.

5.    Defendants design the online marketplace accounts to appear to be selling genuine versions of Plaintiffs' Products while selling inferior imitations of such products.

Answer: Denied.

6.    Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

Answer: Denied.

7.    Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

Answer: Denied.

8.    As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill. They therefore seek temporary, preliminary, and permanent injunctive relief and monetary relief.

Answer: Denied.

## SUBJECT MATTER JURISDICTION

9.    This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims here under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b).

Answer: Admitted.

10.    This Court has jurisdiction over the state-law claim in this

action that arise under the laws of the State of Florida under 28
U.S.C. § 1367(a). The state-law claim is so related to the federal
claims that they form part of the same case or controversy and derive
from a common nucleus of operative facts.

Answer: Denied.

## PERSONAL JURISDICTION AND VENUE

11.    Personal jurisdiction exists over Defendants in this Judicial
District under Florida Statutes § 48.193(1)(a)(1)–(2), or, in the
alternative, Federal Rule Of Civil Procedure 4(k) because, upon
information and belief, Defendants regularly conduct, transact, and/
or solicit business in Florida and in this Judicial District, and/or
derive substantial revenue from business transactions in Florida
and in this Judicial District, and/or otherwise avail themselves of
the privileges and protections of the laws of the State of Florida such
that this Court's assertion of jurisdiction over Defendants does not
offend traditional notions of fair play and substantial justice, and/or
Defendants' illegal counterfeiting and infringing actions caused
injury to Plaintiff in Florida and in this Judicial District such that
Defendants should reasonably expect such actions to have
consequences in Florida and this Judicial District. For example:

    a.    Upon information and belief, Defendants were and/

or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, by operating virtual accounts on the Marketplace Platforms ("Defendant Internet Stores") as well as any and all yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these Defendant Internet Stores––and specifically through the one or more online listing pages for Counterfeit Products publicly accessible and viewable to consumers on each Defendant Internet Store–– Defendants are able to advertise, distribute, offer for sale, and/or sell said Counterfeit Products to consumers in the United States— including in Florida (and more particularly, in this Judicial District). Defendants use these infringing business activities–placing orders for, receiving invoices for, and/or otherwise purchasing Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District)––as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

b.    Upon information and belief, Defendants have

transacted business with consumers in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

Answer: Denied.

12.    Venue is proper in this Court under at least 28 U.S.C. § 1391(b)(2) and Middle District of Florida Local Rule 1.04(b) because Defendants, who have committed acts of trademark infringement in this Judicial District and Division, do substantial business in the Judicial District and Division.

Answer: Admitted.

## THE PLAINTIFFS

13.    Plaintiff Trump Organization is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Florida.

Answer: Admitted.

14.    Plaintiff DTTM is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

Answer: Admitted.

15.    Plaintiff CIC is a limited liability company organized under the laws of the State of Delaware with its principal place of business

in Florida.

Answer: Admitted.

16.    The Trump Organization is Plaintiffs' corporate office and is responsible for the enforcement of the federally registered trademarks owned by DTTM and CIC (attached as Exhibit 1), which were duly and legally issued by the U.S. Patent and Trademark Office, including but not limited to:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,020,556 | MAKE AMERICA GREAT AGAIN | August 16, 2016 | IC 016. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; printed publications, namely, pamphlets providing information regarding Donald J. Trump as a political candidate; posters; pens |

| | | | IC 025. G&S: Clothing, namely, sweatshirts, T-shirts, tank tops, long sleeve shirts; headwear, namely, caps and hats; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts IC 026. G&S: Campaign buttons |
|---|---|---|---|

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,885,602 | MAKE AMERICA GREAT AGAIN | October 15, 2019 | IC 018. G&S: All purpose sport bags; Backpacks; Duffel bags; Knapsacks; Tote bags; Umbrellas |
| | | | IC 018. G&S: All-purpose athletic bags; All-purpose carrying bags; Backpacks; Beach bags; Book bags; Carry-all bags; Change purses; Clutches; Coin purses; Dog apparel; Duffel |

| | | | |
|---|---|---|---|
| 5,921,166 | MAKE AMERICA GREAT AGAIN | November 26, 2019 | bags; Garment bags for travel; Handbags; Key cases; Pet clothing; Purses and wallets; School bags; Small backpacks; Travel bags IC 025. G&S: Footwear; Hats; Jackets; Pants; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Sweat shirts; Swim wear |
| 4,276,258 | TRUMP | January 15, 2013 | IC 016. G&S: Desk accessories, namely, desk pads, paper weights, business card holders.<br><br>IC 021. G&S: glasses, cups, bowls, decanters; beverage glassware. |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | G&S: greeting cards, posters and stationery paper. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens. IC 025. G&S: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts. IC 026. G&S: Campaign buttons. |

| 7,758,981 | TRUMP | April 15, 2025 | IC 025.<br>G&S: Sneakers. |

Answer: Admitted.

## **THE DEFENDANTS**

17.    Defendants are individuals and business entities who,

upon information and belief, reside in Asia.

Answer: Admitted.

18.    Defendants operate as merchants on online e-commerce

platforms, including the Marketplace Platforms.

Answer: Admitted.

## **THE PLAINTIFFS' PRODUCTS**

19.    From the date of the creation of the first of Plaintiffs'

Products to the present, the Trump Organization (and for the

TRUMP Products, its authorized licensees for those products) are

and have been the sole and official sources of genuine versions of

Plaintiffs' Products in the United States and Florida. Plaintiffs'

Products intersect a wide range of sectors, including various

consumer products, real estate, hospitality, golf, entertainment, and

digital-blockchain-based assets. Plaintiffs' promotional efforts for

Plaintiffs' Products include, for example, but not limitation,

substantial marketing and advertising on the internet, such as

through the Trump Organization's official website
(www.trump.com), the Trump Organization's official online store
(www.trumpstore.com), and through television, social media, and
other platforms.

Answer: Admitted.





*Exemplary Images of Plaintiffs' Products Incorporating Plaintiffs'
Trademarks*

20.     For over forty years, the Trump Organization has licensed

rights to its intellectual property, including the TRUMP Trademarks,

to various third parties for the sale of numerous products that

incorporated that intellectual property. The Trump Organization

also sells numerous products that incorporate the MAGA Trademarks. In addition, Plaintiffs' Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the Plaintiffs' Trademarks in the industry and to consumers.

Answer: Admitted.

21.    The certificates of registration for Plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks under 15 U.S.C. § 1057(b).

Answer: Admitted.

22.    Each of Plaintiffs' Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1)–(2)(A), and each of those specific marks has been continuously used and never abandoned.

Answer: Admitted.

23.    Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Plaintiffs' Trademarks. As a result, products bearing Plaintiffs' Trademarks have become enormously popular around the world, driven by Plaintiffs' arduous quality standards and innovative business strategies. Plaintiffs' Products are exclusively associated by consumers, the public, and the trade as being products sourced from

Plaintiffs.

Answer: Admitted.

## THE DEFENDANTS' UNLAWFUL CONDUCT

24.    The success of Plaintiffs' Products has resulted in significant counterfeiting. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and Division and throughout the United States.

Answer: Denied.

25. Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, according to an intellectual property right seizure statistics report issued by U.S. Customs & Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was $5.4 billion—an increase of 415% over the past five years.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue

each year.

Answer: Lack of sufficient knowledge, thus denied.

26. Defendants facilitate sales by designing the Defendant
Internet Stores so that they appear to unknowing consumers to be
authorized online retailers, outlet stores, or wholesalers selling genuine
versions of Plaintiffs' Products. Many of the Defendant Internet Stores
look sophisticated and accept payment in U.S. dollars via credit cards
and PayPal. Defendant Internet Stores often include images and
design elements that make it very difficult for consumers to distinguish
such counterfeit sites from an authorized website.

Answer: Lack of sufficient knowledge, thus denied.

27. Plaintiffs have not licensed or authorized Defendants to use
Plaintiffs' Trademarks, and none of the Defendants is an authorized
retailer of the genuine versions of Plaintiffs' Products.

Answer: Admitted.

28. Defendants also deceive unknowing consumers by using
without authorization Plaintiffs' Trademarks within the product
descriptions, content, text, and/or meta tags of their websites to
attract various search engines crawling the internet looking for
websites relevant to consumer searches for Plaintiffs' Products. As

such, Plaintiffs also seek to disable the Defendant Internet Stores
owned and/or operated by Defendants that are the means by which
Defendants could continue to sell Counterfeit Products into this
Judicial District and Division.

Answer: Denied.

29.    On information and belief, Defendants go to great lengths
to conceal their identities and often use multiple fictitious names and
addresses to register and operate their network of Defendant
Internet Stores. For example, it is common practice for
counterfeiters to register their Defendant Internet Stores with
incomplete information, randomly typed letters, or omitted cities or
states.

Answer: Denied.

30.    Defendants regularly create new websites and online
marketplace accounts on various platforms using the identities listed
in Schedule A, as well as other unknown fictitious names and
addresses. Such Defendant Internet Store registration patterns are
one of many common tactics used by Defendants to conceal their
identities, the full scope and interworking of their counterfeiting
operation, and to avoid being shut down.

Answer: Denied.

31.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective seller identities.

Answer: Denied.

32.    In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

Answer: Denied.

33.    The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume sales discounts, and/or the use of the same text and images.

Answer: Denied.

34.    In addition, Defendants in this case and defendants in similar cases against online counterfeiters use a variety of other

common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.

Answer: Denied.

35.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by law enforcement and other regulatory agencies. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite Plaintiffs' enforcement efforts.

Answer: Denied.

36.    Defendants also maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside this Court's jurisdiction. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal

accounts to foreign-based bank accounts outside this Court's jurisdiction.

Answer: Denied.

37. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and Florida over the internet. Below are examples of Counterfeit Products offered for sale through the Defendants' online storefronts:



| Genuine Plaintiffs' Products | Counterfeit Products |
|---|---|





Answer: Denied.



38. Each Defendant Internet Store offers shipping to the
United States, including Florida (in this Judicial District and
Division) and, on information and belief, each Defendant has offered

to sell counterfeit versions of Plaintiffs' Products into the United

States, including Florida (in this Judicial District and Division).

Answer: Denied.

39.   Defendants' use of Plaintiffs' Trademarks in connection

with the advertising, distribution, offering for sale, and/or sale of

Counterfeit Products is likely to cause and has caused confusion,

mistake, and deception by and among consumers and is irreparably

harming Plaintiffs.

Answer: Denied.

40.   Prior to and contemporaneous with their counterfeiting

actions alleged here, Defendants had knowledge of Plaintiffs'

ownership of Plaintiffs' Trademarks, of the fame and incalculable

goodwill associated therewith, and of the popularity and success of

Plaintiffs' Products, and in bad faith proceeded to manufacture,

market, develop, offer to be sold, and/or sell the Counterfeit

Products.

Answer: Denied.

41.   Defendants have been engaging in the illegal counterfeiting

actions, as alleged here, knowingly and intentionally, or with reckless

disregard or willful blindness to Plaintiffs' rights, or in bad faith, for

the purpose of trading on the goodwill and reputation of Plaintiffs

and Plaintiffs' Products.

Answer: Denied.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND
## COUNTERFEITING (15 U.S.C. § 1114 *et seq.*)

42.    Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

Answer: Denied.

43.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. Plaintiffs' Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under Plaintiffs' Trademarks.

Answer: Denied.

44.    Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with Plaintiffs' Trademarks without Plaintiffs' permission.

Answer: Denied.

45.    Plaintiff CIC is the registered owner of the MAGA Trademarks.

Plaintiff DTTM is the registered owner of the TRUMP Trademarks.
Plaintiffs are the official source of Plaintiffs' Products. The U.S.
registrations for Plaintiffs' Trademarks (Exhibit 1) are in full force and
effect. Upon information and belief, Defendants have knowledge of
Plaintiffs' rights in Plaintiffs' Trademarks and are willfully infringing
and intentionally using counterfeits of Plaintiffs' Trademarks.
Defendants' willful, intentional, and unauthorized use of Plaintiffs'
Trademarks is likely to cause and is causing confusion, mistake, and
deception as to the origin and quality of the counterfeit goods among
the general public.

Answer: Denied.

46.    As just two examples, Defendants deceive unknowing
consumers by using Plaintiffs' Trademarks without authorization
within the product descriptions of their online marketplace accounts
to attract customers as follows:



*Exemplars of Counterfeit Products Sold by Defendants Infringing on Plaintiffs' Trademarks*

Answer: Denied.

47.    Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

Answer: Denied.

48.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful

manufacture, use, advertisement, promotion, offering to sell, and/or

sale of Counterfeit Products.

Answer: Denied.

49.    Plaintiffs have no adequate remedy at law, and, if

Defendants' actions are not enjoined, Plaintiffs will continue to

suffer irreparable harm to their reputation and the goodwill of their

well-known MAGA and TRUMP Trademarks.

Answer: Denied.

## SECOND CAUSE OF ACTION FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a) *et seq.*)

50.    Plaintiffs repeat and incorporate by reference here

          their allegations contained in paragraphs 1–41 of this Complaint.

Answer: Denied.

51.    Defendants' manufacture, promotion, marketing, offering

for sale, and/or sale of Counterfeit Products has created and is

creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with

Plaintiffs or the origin, sponsorship, or approval of Defendants'

Counterfeit Products by Plaintiffs.

Answer: Denied.

52.    By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

Answer: Denied.

53.    Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

Answer: Denied.

54.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

Answer: Denied.

## THIRD CAUSE OF ACTION COMMON LAW UNFAIR COMPETITION

55.    Plaintiffs repeat and incorporate by reference here their allegations contained in paragraphs 1–41 of this Complaint.

Answer: Denied.

56.    Plaintiffs have not licensed or authorized Defendants to use

Plaintiffs' Trademarks, and none of the Defendants is an authorized
retailer of genuine versions of Plaintiffs' Products.

Answer: Admitted.

57. Defendants knowingly and intentionally trade upon
Plaintiffs' reputation and goodwill by selling and/or offering for sale
products in connection with Plaintiffs' Trademarks.

Answer: Denied.

58. Defendants' manufacture, promotion, marketing, offering
for sale, and/or sale of Counterfeit Products has created and is
creating a likelihood of confusion, mistake, and deception among the
general public as to the quality, affiliation, connection, or association
with Plaintiffs or the origin, sponsorship, or approval of Defendants'
Counterfeit Products by Plaintiffs in violation of Florida's common
law of unfair competition.

Answer: Denied.

59. Defendants knew, or should have known, that their
manufacture, promotion, marketing, offering for sale, and/or sale of
Counterfeit Products has caused and will continue to cause confusion,
mistake, and deception among purchasers, users, and the public.

Answer: Denied.

60. In fact, Defendants have fraudulently represented by their

statements and actions that the Counterfeit Products are Plaintiffs'

products including, for example, by (i) using the same or

substantially similar payment and check-out methods on their

websites to misdirect customers seeking Plaintiffs' Products to the

Defendant Internet Stores; (ii) using deceptive advertising practices

within the content, text, and/or meta data of the online

marketplace accounts; and (iii) taking other steps to deceive and

confuse the consuming public.

Answer: Denied.

61.    On information and belief, Defendants' conduct is willful

and intentional as Defendants try to avoid liability by concealing

their identities, using multiple fictitious names and addresses to

register and operate their illegal counterfeiting operations and

Defendant Internet Stores.

Answer: Denied.

62.    Plaintiffs have no adequate remedy at law, and Defendants'

conduct has caused Plaintiffs to suffer damage to their reputation

and goodwill.  Unless enjoined by the Court, Plaintiffs will suffer

future irreparable harm as a direct result of Defendants' unlawful

activities.

Answer: Denied.

## PRAYER FOR RELIEF

Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.    That Defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

a.    using Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a MAGA or TRUMP Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiffs' Products or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.    further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

e.    otherwise competing unfairly with Plaintiffs in any manner;

f.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' Trademarks, including Plaintiffs' Trademarks;

g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the

Plaintiffs' Trademarks that is not a genuine version of Plaintiffs' Products or not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks.

    2.    Entry of an Order that Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, Wish, and any other online marketplace account provider:

    a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

    b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

    c.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

    d.    deliver up and destroy all Counterfeit Products under 15 U.S.C. § 1118.

3.       That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts alleged here, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a)–(b).

4.       In the alternative, that Plaintiffs be awarded statutory damages under 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the Plaintiffs' Trademarks.

5.       That Plaintiffs be awarded their reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a)–(b); and

6.       Award any and all other relief that this Court deems just and proper.

Answer: Denied.

AFFIRMATIVE AND OTHER DEFENSES

Without admitting any allegation in the Complaint and without assuming any burden of proof that would otherwise rest on Plaintiffs, Defendant asserts the following affirmative defenses:

1. Lack of Personal Jurisdiction — This Court lacks personal jurisdiction over Defendant.

2. First Amendment — Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the United States Constitution, as any use by Defendant constitutes protected political or expressive speech.

3 No Likelihood of Confusion — There is no likelihood of confusion, deception, or mistake as to the source, sponsorship, affiliation, or approval of Defendant's goods.

4. Laches, Estoppel, and Acquiescence — Plaintiffs' claims are barred, in whole or in part, by laches, estoppel, and/or acquiescence.

5. No Willful Infringement — Plaintiffs are not entitled to any enhanced damages or attorneys' fees, as there has been no willful infringement.

Defendant reserves the right to assert additional defenses as discovery proceeds.

PRAYER FOR RELIEF

WHEREFORE, Defendant prays that the Court:

a. Dismiss the Complaint with prejudice;

b. Deny all relief requested by Plaintiffs;

c. Award Defendant costs and attorneys' fees; and

d. Grant such other and further relief as the Court deems just and proper.

Dated: December 17, 2025

/s/ Jianyin Liu

Jianyin Liu, Esq.
Florida Bar No. 1007675
jamesliulaw@gmail.com
The Law Offices of James Liu PLLC
15750 SW 92nd Ave Unit 20C
Palmetto Bay, FL 33157
Phone: (305) 209-6188
Attorney for Defendant Sherenzhuangliang
(Limited Appearance for Settlement and Answer
Purposes Only)

CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system, which will send
notification of such filing to all counsel of record.

/s/ Jianyin Liu
Jianyin Liu