UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE TRUMP ORGANIZATION
LLC and DTTM OPERATIONS
LLC, and CIC OPERATIONS, LLC,

    Plaintiffs,

    v.                                         Case No. 8:25-cv-3053-TPB-NHA

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY
COMPANIES,
PARTNERSHIPS, and
UNINCORPORATED
ASSOCIATIONS
IDENTIFIED ON
SCHEDULE A,

    Defendants.

_____/

**ORDER GRANTING PLAINTIFFS'
"MOTION FOR PRELIMINARY INJUNCTION"**

This matter is before the Court upon Plaintiffs' "Motion for Preliminary Injunction," filed on December 8, 2025. (Doc. 39). Plaintiffs The Trump Organization LLC, DTTM Operations LLC, and CIC Operations, LLC, move for entry of a preliminary injunction against Defendants the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A and using at least the seller identities identified in Schedule A (the "Defendant Internet Stores") and the online marketplace accounts identified in Schedule A (the "online marketplace accounts"), and an order maintaining the restraints on the financial

accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

In support of their motion for preliminary injunction, Plaintiffs attached their complaint (Doc. 1), copies of the certifications of registration for Plaintiffs' trademarks (Doc. 1-1), Schedule A listing Defendants (Doc. 17), the declaration of Alan Garten in support of Plaintiffs' *ex parte* motion for a temporary restraining order ("TRO") (Doc. 15-1), screenshots of Defendants' counterfeit products for sale (Doc. 39-5), and the Court's Order granting Plaintiffs' motion for TRO (Doc. 18).

The Court held a hearing on January 21, 2026. (Doc. 96). Because Plaintiffs have satisfied the requirement for the issuance of a preliminary injunction, the Court will now grant Plaintiffs' motion for preliminary injunction as to Defendants listed in Schedule A.

## Background

The Trump Organization is responsible for the enforcement of the federally registered trademarks owned by DTTM and CIC, which were duly and legally issued by the United States Patent and Trademark Office, including but not limited to the following:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 5,020,556 | MAKE AMERICA GREAT AGAIN | August 16, 2016 | IC 016.<br><br>G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | banners of paper or cardboard; printed publications, namely, pamphlets providing information regarding Donald J. Trump as a political candidate; posters; pens. IC 025. G&S: Clothing, namely, sweatshirts, T-shirts, tank tops, long sleeve shirts; headwear, namely, caps and hats; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts. IC 026. G&S: Campaign buttons. |
| 5,885,602 | MAKE AMERICA GREAT AGAIN | October 15, 2019 | IC 018. G&S: All purpose sport bags; Backpacks; Duffel bags; Knapsacks; Tote bags; Umbrellas. |
| 5,921,166 | MAKE AMERICA GREAT AGAIN | November 26, 2019 | IC 018. G&S: All-purpose athletic bags; All-purpose carrying bags; Backpacks; Beach bags; Book bags; Carry-all bags; Change purses; Clutches; Coin purses; Dog apparel; Duffel bags; Garment bags for travel; Handbags; Key cases; Pet clothing; Purses and wallets; School bags; |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | Small backpacks; Travel bags. IC 025. G&S: Footwear; Hats; Jackets; Pants; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Sweat shirts; Swim wear. |
| 4,276,258 | TRUMP | January 15, 2013 | IC 016. G&S: Desk accessories, namely, desk pads, paper weights, business card holders. IC 021. G&S: glasses, cups, bowls, decanters; beverage glassware. |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. G&S: greeting cards, posters and stationary paper. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens. IC 025. G&S: Clothing, namely, |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts.<br><br>IC 026.<br><br>G&S: Campaign buttons. |
| 7,758,981 | TRUMP | April 15, 2025 | IC 025.<br><br>G&S: Sneakers. |

From the date of the creation of the first of Plaintiffs' products to the present, the Trump Organization and its authorized licensees are and have been the sole and official source of genuine versions of Plaintiffs' products in the United States and Florida, which intersect a wide range of sectors, including real estate development, hospitality, golf, entertainment, digital-blockchain based assets, and various consumer products. (Doc. 1, at ¶ 19). Plaintiffs' promotional efforts of the products include, among other things, substantial marketing and advertising on the internet, through the Trump Organization's official website (www.trump.com), the Trump Organization's official online store (www.trumpstore.com), and through television, social media, and other platforms. (*Id.*).

Defendants have advertised, promoted, offered for sale, and/or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of Plaintiffs' trademarks (the

"counterfeit products"). (Doc. 15-1, Garten Decl., at ¶¶ 12-14).

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiffs' trademarks. (*Id.*, at ¶ 17).

Plaintiffs investigated the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants. (*Id.*, at ¶¶ 14-16). Plaintiffs accessed or attempted to access each e-commerce store operating under the Defendant Internet Stores, purchased or attempted to initiate the purchase of a product from each Defendant Internet Store, bearing counterfeits of Plaintiffs' trademarks at issue in this action, and completed or attempted to complete a checkout page requesting each product to be shipped to an address in the Middle District of Florida. (*Id.*). Plaintiffs conducted a review and visually inspected the counterfeit products branded items for which orders were initiated by Plaintiffs' third-party investigator via the Defendant Internet Stores and determined the products were non-genuine, unauthorized versions of Plaintiffs' products. (*Id.*).

## Legal Standard

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading*

*Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## Analysis

The Court finds as follows:

A. Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiffs' trademarks, and that the products Defendants are selling and promoting for sale are counterfeit products bearing Plaintiffs' trademarks.

B. Because of the infringement of Plaintiffs' trademarks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' complaint (Doc. 1), motion for TRO (Doc. 15), motion for preliminary injunction (Doc. 39), and accompanying declarations and exhibits, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers in view of the following considerations:

1. Defendants own or control e-commerce stores and commercial internet websites operating under their respective seller identification names and domain names that advertise, promote, offer for sale, and sell products bearing Plaintiffs' trademarks in violation of Plaintiffs' respective rights;

2. There is good cause to believe that more counterfeit products

bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products; and

  C. The balance of potential harm to Defendants in restraining their trade in counterfeit goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their reputation, and their goodwill as manufacturers and distributors of quality products if such relief is not issued.

  D. The public interest favors issuance of a preliminary injunction to protect Plaintiffs' trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

  E. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing Plaintiffs' trademarks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

  F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Fed. Trade Comm'n v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-

34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiffs' "Motion for Preliminary Injunction" (Doc. 39) is hereby **GRANTED**, as set forth herein.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby preliminarily **ENJOINED** from directly or indirectly:

    a. Using Plaintiffs' trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' product or not authorized by Plaintiffs to be sold in connection with Plaintiffs' trademarks;

    b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' product, or any other product produced by Plaintiffs, that is not Plaintiffs' product or not produced under the authorization, control, or

supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' trademarks;

  c. Committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

  d. Further infringing Plaintiffs' trademarks and/or damaging Plaintiffs' goodwill;

  e. Shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

  f. Using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products bearing, using, or infringing on Plaintiffs' trademarks; and

  g. Operating and/or hosting websites at the Defendant Internet Stores and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing, using, or infringing on Plaintiffs' trademarks and/or any

reproductions, counterfeit copies, or colorable imitations thereof that is not a genuine Plaintiffs' product or not authorized by Plaintiffs to be sold in connection with Plaintiffs' trademarks.

(3)     Each Defendant, within fourteen days after receiving notice of this Order, shall serve upon Plaintiffs a written report under oath providing (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate, (c) their financial accounts, including by way of example all Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through g, above.

(4)     Those in privity with Defendants and with actual notice of this Order, including the marketplace platforms and any other online marketplaces, any financial institutions, including without limitation (i) Contextlogic, Inc. ("Wish"), (ii) PayPal, Inc. ("PayPal"), (iii) Payoneer, Inc. ("Payoneer"), (iv) the Alibaba Group d/b/a Alibaba.com and Aliexpress.com ("Alibaba"), (v) Amazon Payment Systems, Inc. and Amazon.com, Inc. ("Amazon"), (vi) Ping Pong Global Solutions, Inc. ("Ping Pong"), (vii) DHgate.com ("DHgate"), (viii) eBay, Inc. ("eBay"), (ix) Coinbase Global, Inc. ("Coinbase"), (x) LianLian Global t/as LL Pay U.S., LLC ("LianLian"), (xi) GoAllPay ("AllPay"), (xii) Union Mobile Financial Technology Co., Ltd ("Union Mobile"), (xiii) World First UK Ltd. ("World First"), (xiv) Paxful, Inc. ("Paxful"), (xv) Stripe, Inc. ("Stripe"), (xvi) USForex, Inc. d/b/a OFX ("OFX"), (xvii) other payment processing service providers, (xviii) merchant account providers, (xix) payment

providers, (xx) third party processors, (xxi) banks, (xxii) savings and loan associations, and (xxiii) credit card associations (*e.g.*, MasterCard and VISA) (the "financial institutions"), social media platforms, Facebook, YouTube, Linkedin, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall within three business days of receipt of this Order:

      a.    disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit goods bearing, using, or infringing on Plaintiffs' trademarks, including any accounts associated with Defendants;

      b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit goods bearing, using, or infringing on Plaintiffs' trademarks; and

      c.    take all steps necessary to prevent links to the Defendant Internet Stores from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

(5)    Defendants and any third party with actual notice of this Order who is providing services for any of Defendants, or in connection with any of Defendants' websites at the Defendant Internet Stores or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as AliExpress, Amazon, DHgate, eBay, and Walmart, and any internet service providers ("ISP"), web hosts, back-end service providers, web designers, sponsored

search engine or ad-word providers, banks, or merchant account providers, including Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay, third party processors and other payment processing service providers, shippers, the financial institutions, and domain name registrars (the "third party providers") shall, within five business days after receipt of such notice, provide to Plaintiffs expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

    a.    The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

    b.    The nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the online marketplace accounts, the Defendant Internet Stores, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective online marketplace accounts and Defendant Internet Stores;

    c.    Defendants' websites and/or any online marketplace accounts;

    d.    The Defendant Internet Stores or any domain name registered by Defendants; and

    e.    Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts

residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay, or other merchant account providers, payment providers, third party processors, and credit card associations (*e.g.*, MasterCard and VISA).

(6) Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

(7) The marketplace platforms shall, within five business days of receipt of this Order, for any Defendant or any of Defendants' online marketplace accounts or websites

　　a.　Locate all accounts and funds connected and/or related to Defendants, Defendants' online marketplace accounts, or Defendants' websites, including, but not limited to, any Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts connected and/or related to the information listed in Schedule A to the complaint; and

　　b.　Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

(8) The financial institutions, any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of

Defendants' online marketplace accounts or websites, shall within five business days of receipt of this Order

      a.    Locate all accounts and funds connected and/or related to Defendants, Defendants' online marketplace accounts or Defendants' websites, including, but not limited to, any accounts connected and/or related to the information listed in Schedule A to the complaint; and

      b.    Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

(9)    Plaintiffs may provide notice of these proceedings to Defendants by electronically publishing a link to the complaint, this Order, and other relevant documents on a website or by sending an email to all email addresses identified by Plaintiffs and any email addresses provided for Defendants by third parties that includes a link to said website.  The combination of providing notice via electronic publication or email, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(10)    Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiffs or on shorter notice as set by this Court.

(11)    The $10,000.00 bond posted by Plaintiffs shall remain with the Court

until a final disposition of this case or until this preliminary injunction is terminated.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of January, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE