UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE TRUMP ORGANIZATION LLC
DTTM OPERATIONS LLC,
and CIC OPERATIONS LLC,

      Plaintiff,

v.                             Case No. 8:25-cv-03053-TPB-NHA

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, and
UNINCORPORATED
ASSOCIATIONS
IDENTIFIED ON
SCHEDULE A,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiffs The Trump Organization LLC ("Trump Organization"), DTTM Operations LLC ("DTTM"), and CIC Operations LLC ("CIC") move for entry of final default judgment against the non-appearing Defendants (the "Defaulted Defendants"). Doc. 106. Plaintiffs additionally seek an award of statutory damages and a permanent injunction prohibiting the Defaulted Defendants from using Plaintiff's trademarks. I recommend the District Court grant the motion in part. Specifically, I recommend the Court enter judgment in favor of

1

Plaintiffs DTTM and against the Defaulted Defendants who infringed on the TRUMP trademark on Counts I (trademark infringement), II (false designation of origin), and III (common law unfair competition); in favor of Plaintiff CIC and against the Defaulted Defendants who infringed on the MAKE AMERICA GREAT AGAIN trademark on Counts I (trademark infringement), II (false designation of origin), and III (common law unfair competition); and in favor of Plaintiff Trump Organization and against the Defaulted Defendants on Count II (false designation of origin). I further recommend that the Court enter a permanent injunction against the Defaulted Defendants to stop their infringing activities and award Plaintiffs DTTM and CIC statutory damages on Count I.[1]

## I.  Background

Plaintiffs CIC and DTTM own registered trademarks for "MAKE AMERICA GREAT AGAIN" (U.S. Trademark Registration Nos. 5,020,556, 5,885,602, and 5,921,166) and "TRUMP" (U.S. Trademark Registration Nos. 4,276,258, 4,332,755, 5,080,397, and 7,758,981), respectively. Compl. (Doc. 1) ¶¶ 1, 16; Doc. 1-1 (certificates of registration). Plaintiff Trump Organization is charged with enforcing those trademarks. Compl. (Doc. 1) ¶ 16.

---

[1] Plaintiffs acknowledge that "judgment on Counts II and III should be limited to the amount awarded under Count I and entry of the requested equitable relief." Doc. 106 p. 24. Thus, I do not recommend separate damages be awarded in Counts II and III.

Together, Plaintiffs bring claims against numerous online merchants whom Plaintiffs allege sold products bearing their trademarks in online marketplaces such as Alibaba, AliExpress, DHgate, eBay, Etsy, Walmart, and Wish. *Id.* ¶¶ 4, 18; Doc. 7-1. Plaintiffs allege that Defendants operate online "stores" designed to look like "authorized online retailers, outlet stores, or wholesalers selling genuine versions of Plaintiffs' Products." Compl. (Doc. 1) ¶ 26. Like Plaintiffs' stores, the Defendants' stores are found online and "look sophisticated and accept payment in U.S. dollars via credit cards and PayPal." Compl. (Doc. 1) ¶ 26. Defendants' products are designed to look the same as Plaintiffs' products. Compl. (Doc. 1) ¶ 37. Plaintiffs allege that Defendants act knowingly, intending to deceive the consuming public into believing they are purchasing Plaintiff's products, and that they try to avoid liability by concealing their identities. Compl. (Doc. 1) ¶¶ 57, 60, 61.

Plaintiffs bring three claims against Defendants.

In Count I, Plaintiffs bring a claim for trademark infringement and counterfeiting, in violation of 15 U.S.C. § 1114 et seq. Compl. (Doc. 1), p. 23. Specifically, Plaintiffs allege that Defendants know of Plaintiffs' rights in the trademarks and willfully infringe and intentionally use counterfeits of the trademarks by offering trademarked products for sale on Defendants' online marketplaces. Compl. (Doc. 1) ¶¶ 42–49.

3

In Count II, Plaintiffs assert a claim for false designation of origin, in violation of 15 U.S.C. § 1125. Compl. (Doc. 1), p. 25. Specifically, they allege that Defendants' sale of the infringing products creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' counterfeit products by Plaintiffs. Compl. (Doc. 1) ¶¶ 50–54.

Finally, in Count III, Plaintiffs assert a claim for common law unfair competition.[2] Compl. (Doc. 1), p. 26. Plaintiffs allege that Defendants knowingly and intentionally sell products bearing Plaintiffs' trademarks and fraudulently represent that the products are associated with Plaintiffs. Compl. (Doc. 1) ¶¶ 55–62.

## II. <u>Procedural History</u>

Plaintiffs filed this action on November 6, 2025. Compl. (Doc. 1). Plaintiffs then moved for a temporary restraining order (Doc. 15), which the Court granted (Doc. 18).

---

[2] While a plaintiff may prevail on multiple legal theories arising from the same injury, only a single recovery of damages for that injury is allowed. *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009). Thus, plaintiff may bring both federal and state law claims for trademark infringement. *See, e.g., MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 677 n. 2 (11th Cir. 2022).

The Court authorized Plaintiffs to serve Defendants "by electronically publishing a link to the complaint, th[e Temporary Restraining] Order, and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified on Schedule A to the complaint and any email addresses provided for Defendants by third parties that includes a link to said website." Doc. 18 p. 11; *see also* Doc. 35.

On December 5, 2025, counsel for Plaintiffs sent notice to the email addresses provided by the third-party-marketplace platforms for all Defendants, attaching copies of the Complaint, a Summons, the Temporary Restraining Order, and other filings in this case, and included a link to Plaintiffs' designated notice website for this action, where copies of all those documents, and all other docket entries, are posted. Doc. 95 pp. 2–3. Following the service, Plaintiffs settled their claims against Defendants awesome888, aishang-vip (aishan2012), amazingvalue-deal99, chenshans83, ComfortMart, dandai (SanQuYi)), dreamhouse_88, fifty-fiv-55-fifty-five (chrom_6663), lifan-34, nengzhuan, theglobalsales11 (or27ma), y8x_seller, yilutengda_888, Action Home, CHENGCHONG, ChuangTaiShangMao, Domzest, Hinati, HUANGBATAN.KEJI, HUAWAY, Junxin, mingzhudianzi, NODSUUP Store, OmniDaily Essentials, Pushtek Co. ltd, putianxiuyuxiamingshangmao, shangxiangdianzishangwu, Shining-Stars, Spretsnow, Springhua E-commerce Co., Ltd., WENQUNF, xiamingshangmao, YiShuJia, YueFeiHaiGongSi, Cozy

5

Grocery, Dressonce, and Zeal Oddities. Docs. 32, 48, 49, 52, 53, 61, 62, 69, 70, 73, 77, 83, 86, 90, 94, 103, 108. Those Defendants have since been dismissed from this action. Docs. 32, 48, 49, 52, 53, 61, 62, 69, 70, 73, 77, 83, 86, 90, 94, 103, 108.

Defendant Sherenzhuangliang answered the Complaint (Doc. 55) and later settled with Plaintiffs (Doc. 110).

The remainder of Defendants failed to answer or otherwise respond to the Complaint. Doc. 95. Accordingly, Plaintiffs sought entry of Clerk's default against the remainder of Defendants. *Id*. The Court granted Plaintiffs' motion (Doc. 104) and the Clerk entered default against the remaining Defendants: AWARTEN INTERNATIONAL, Baoding Solin Shoes And Hats Sales Co., Ltd., Hebei Dishixiao Gloves Manufacture Co., Ltd., Hebei Qianxian Trading Co., Ltd., QUICK PUNCH, Shenzhen Yilu Youni Technology Co., Ltd., Wenzhou Tisdan Industry And Trade Co., Ltd., Yiwu Lianjin Electronic Commerce Co., Ltd, Yiwu Shangyi Garment Co., Ltd., Yiwu Tooomo Import & Export Co., Ltd., Dream ReaLm Store, Global Cool Car Store, Hot Wholesale Store, Jemma Cosplay Costume Store, Jemma Cosplay Store, PRO Club Global Store, Shop1104492693 Store, Top Daily Necessities Store, Wenkun0706 Store, babynice126, cup0830, daye05, diao05, gardenhome01, goodlifefactory, homemarket19, killy1688, mengyang10, pang05, ren03, saraha_store, smyy6, smyy888, trendy_top_store, zxdingzhi, 2021-andy-01, blingjellyfish,

6

dillmurlati,    glo56junry51,    qinchen77View    profile    (qinchen77),

yiwushichangxiaf-0, Zhengkai Zhu (yiwushilianliugongch-0), Zhonghao Zhu,

(yiwushizhuihedianzi0),    HaiYenHandmadeVN,    KENTGIFT,    CJLSD,

Eachnice, FuLiuFuLiu, Gaga Clothing, Gardening Tools Store, GuXianMing,

HGT-TECH, Jigreat, Koninya, L8502-LXYB Clothing, Leemo, LLFCLL, Magic

Pocket, Novasphere, Quickwittc, tian sheng yi an, TJSHOP, Uncle Nee's Store,

Xi an Shenghe Jurui Technology, Xunxing Technology, yali, ZYDZ Store,

Drybrownfiercegj, Etzel, Fighting123, louxuqongliu, sunshine-cheongsam, and

yangaimei (together, "the Defaulted Defendants").[3] Doc. 105.

Plaintiffs now seek final default judgment against the Defaulted

Defendants. Doc. 106.

### III.   Standard of Review

"When a defendant has failed to plead or defend, a district court may

enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239,

1244 (11th Cir. 2015) (citing FED. R. CIV. P. 55(b)(2)). A Clerk's default under

Rule 55(a) deems the defendant to have admitted the plaintiff's well-pleaded

allegations of fact. *Id.* at 1245 (citing *Cotton v. Massachusetts Mut. Life Ins.*

---

[3] The Clerk also entered default against Defendant huangbatan.keji, but
Plaintiffs later settled with this Defendant. Thus, huangbatan.keji is not a
Defaulting Defendant.

*Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defendant is not deemed to have admitted facts that are not well-pleaded or conclusions of law. *Id.*

Notwithstanding the entry of Clerk's default, the Court may enter default judgment only if the complaint states a plausible claim for relief. In evaluating a motion for default judgment, courts apply a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

If a plaintiff establishes entitlement to a default judgment, the court must also determine whether the requested relief, including injunctive relief, is appropriate. *See XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, 668 F. Supp 3d 1268, 1275 (S.D. Fla. 2023) ("Injunctive relief is available in a default judgment setting.").

A defendant's default does not automatically establish the amount or type of relief to which a plaintiff is entitled; the Court must ensure there is a legitimate basis for any relief awarded. *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir.

8

1985). When necessary, the Court may conduct a hearing to determine damages, but no hearing is required where the amount sought is capable of mathematical calculation or otherwise supported by the record. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n. 13 (11th Cir. 2005) (quoting *Adolph*, 777 F.2d at 1544); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence supports the request for damages).

### IV.   <u>Analysis</u>

#### a.   <u>Subject matter jurisdiction</u>

##### i.   *Federal question jurisdiction under 28 U.S.C. § 1331*

As a preliminary matter, the Court has subject matter jurisdiction over the trademark infringement (Count I) and false designation of origins (count II) claims in this action pursuant to 28 U.S.C. § 1331.

Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983).

Plaintiffs bring their first two claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). Compl. (Doc. 1) pp. 23–26. Because Plaintiffs' first two claims arise under the federal Trademark Act (known as the Lanham Act), the Court has federal question jurisdiction.

### ii.  Supplemental jurisdiction under 28 U.S.C. § 1367(a)

The court also has subject matter jurisdiction over the common law unfair competition claim (Count III), pursuant to 28 U.S.C. § 1367(a), which grants federal courts supplemental jurisdiction over all claims that form part of the same "case or controversy" as the original jurisdiction claims. 28 U.S.C. § 1367(a). A state law claim qualifies for supplemental jurisdiction when it shares a "common nucleus of operative fact" with the federal claims, meaning it would ordinarily be expected to be tried in the same judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). This standard is met when the state law claims involve the same witnesses, the same evidence, and the same or very similar facts as the federal claims. *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1563–64 (11th Cir. 1994); see also *Promex, LLC v. Perez Distribg. Fresno, Inc.*, No. 09-22285-CIV, 2010 WL 3452341, at *12 (S.D. Fla. Sept. 1, 2010) (supplemental jurisdiction over unfair competition claim where both claims arose from defendant's same sales conduct).

Here, the federal trademark infringement and false designation of origin claims (Counts I and II), and the common law unfair competition claim (Count III) arise from the same nucleus of operative fact—Defendants' allegedly unauthorized use of Plaintiffs' trademark in commerce in a manner likely to cause confusion among consumers. Compl. (Doc. 1). Proving each claim will likely require the same witnesses, the same evidence of Defendants' conduct in the marketplace, and the same factual determinations regarding consumer confusion and the strength of Plaintiffs' trademarks. Accordingly, the common law unfair competition claim arises from the same case and controversy as the federal claims, and this Court has supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367(a).

### b. Service and Clerk's Default

Next, Plaintiffs have properly served the Defaulted Defendants. In seeking a default judgment, a plaintiff bears the burden of establishing proper service of the complaint. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). And "[g]enerally, where service of process is insufficient, the court has no power to render judgment." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003).

11

Federal Rule of Civil Procedure 4(h)(2) provides that a defendant entity located outside of a judicial district of the United States may be served pursuant to Rule 4(f). Rule 4(f), in turn, allows for service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(1), (f)(3).

Here, the Court ruled that Plaintiffs could serve Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3) "by electronically publishing a link to the complaint, th[e] Order [granting a temporary restraining order], and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified on Schedule A to the complaint and any email addresses provided for Defendants by third parties that includes a link to said website." Doc. 18 p. 11; *see also* Doc. 35.

Plaintiffs state that, on December 5, 2025, counsel for Plaintiffs did just that. Docs. 95, 95-1. Counsel sent emails to the email addresses provided by the third-party-marketplace platforms for all Defendants, attaching copies of the Complaint, the Summons, the Temporary Restraining Order, and other filings in this case, and included a link to Plaintiffs' designated notice website for this action, where copies of all those documents, and other docket entries,

12

are posted. Doc. 95 pp. 2–3. Thus, Plaintiffs served Defendants in accordance with the Court's prior orders. Docs. 18, 35.

The Defaulted Defendants had until December 26, 2025—21 days after being served with the summons and complaint—to serve an answer or otherwise respond. FED. R. CIV. P. 12(A)(1)(A). They failed to answer or respond to the Complaint, timely or otherwise, and the time to do so had expired. Thus, the Clerk's default (Doc. 105) was appropriately entered.

c. Personal Jurisdiction

In addition to ensuring proper service, a court must also ensure it has personal jurisdiction over any defaulting defendant. Plaintiffs bear the burden of establishing personal jurisdiction. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).

To determine whether the exercise of personal jurisdiction over a nonresident defendant is proper, a Court must decide: (1) whether jurisdiction is appropriate under the forum state's long-arm statute, and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)).

*i. Jurisdiction is proper under Florida's long-arm statute.*

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a nonresident defendant who engages in one of the acts listed in Section 48.193(1)(a) of the Florida Statutes. *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1203–04 (11th Cir. 2015). If a court has personal jurisdiction over a defendant on a single claim it may exercise personal jurisdiction over the defendant on any other claims arising from the same jurisdiction-generating event. *See Cronin v. Wash. Nat'l Ins. Co.,* 980 F.2d 663, 671 (11th Cir. 1993).

Trademark claims, which Plaintiffs bring here, allege "tortious acts" for purposes of Florida's long-arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013). Under the long-arm statute, the tortious act must be committed within Florida, but "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida." Louis Vuitton,* 736 F.3d at 1353 (emphasis in original) (quoting *Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008)); *see also Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216–17 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida). Trademark infringement on an

14

Internet website causes injury and occurs in Florida "by virtue of the website's accessibility in Florida." *Lovelady,* 544 F.3d at 1283.

Here, Plaintiffs allege that each of Defendants' online storefronts were accessible in Florida. Compl. (Doc. 1) ¶¶ 11, 37–38. This is sufficient to confer jurisdiction under Florida's long-arm statute. Thus, exercise of jurisdiction over the nonresident Defendants is appropriate under Florida's long-arm statute.

*ii.   Jurisdiction comports with constitutional due process.*

A "completely different analysis" informs whether the exercise of personal jurisdiction over a nonresident defendants would violate the Due Process Clause of the Fourteenth Amendment. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000).

"The due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Lovelady*, 544 F.3d at 1284 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The due process clause examines: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise

15

of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

*Louis Vuitton Malletier, S.A. v. Mosseri* involved allegations of trademark infringement. 736 F.3d at 1343. There, the plaintiff, Louis Vuitton, alleged that the defendant operated "websites on which Florida customers could view, buy, and pay for products bearing counterfeits of the Louis Vuitton trademarks." 736 F.3d at 1343, 1348. The plaintiff sued in the Southern District of Florida and, after the defendant failed to appear, the district court entered default judgment against him. *Id.* at 1343, 1347. The defendant moved to vacate the default judgment on the grounds that the district court lacked personal jurisdiction over him and, after the district court denied that motion, the defendant appealed. *Id.* at 1347–50.

In considering whether the district court's exercise of personal jurisdiction over the defendant violated due process, the Eleventh Circuit found that the claim arose out of the defendant's contacts with the state (the first prong of the Due Process test), because the defendant's "ties to Florida all

16

involve[d] the advertising, selling, and distributing of alleged counterfeit and infringing Louis Vuitton goods into the state and accepting payment from Florida customers for such goods." *Id.* at 1356. The Eleventh Circuit similarly concluded that the defendant purposefully availed himself of the benefits of the state (the second prong of the test), because the defendant "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website, . . . received orders from multiple Florida residents . . . [,] . . . [and] shipped those goods . . . into Florida." *Id.* at 1357.

Here, like in *Louis Vuitton*, the claims arise out of Defaulted Defendants' contacts with Florida. Plaintiffs allege that the nonresident Defaulted Defendants marketed the wrongfully trademarked products to Florida customers, accepted payments from Florida customers, and shipped products to Florida. Compl. (Doc. 1) ¶ 11. It is this marketing and selling of which Plaintiffs complain in each of their counts. And, Plaintiffs plead facts showing the Defaulted Defendants availed themselves of the benefits of the state. Plaintiffs allege that the Defaulted Defendants were "systematically directing and/or targeting their business activities at consumers" and were able to "advertise, distribute, offer for sale, and/or sell said Counterfeit Products" to consumers in Florida and in this Judicial District. Compl. (Doc. 1) ¶ 11. Plaintiffs allege that Defaulted Defendants have transacted business with Florida consumers for the sale and shipment of those products, thereby causing

17

injury to Plaintiffs in this forum, such that the Defaulted Defendants should reasonably anticipate being haled into court here. Compl. (Doc. 1) ¶ 11; *see also* Doc. 106-5 p. 170–Doc. 106-7 p. 35 (evidence of sales to Florida).

For the third prong, the Defaulted Defendants have not made a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. Indeed, the Defaulted Defendants have failed to present any argument on this point. Nevertheless, because a defendant may later challenge a default judgment on jurisdictional grounds, the Court must still ensure that the exercise of jurisdiction comports with due process. *See Baragona v. Kuwait Gulf Link Transport Co.*, 594 F.3d 852, 854 (11th Cir. 2010); *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir. 2007). To determine whether jurisdiction comports with traditional notions of fair play and substantial justice, courts consider: "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Louis Vuitton*, 736 F.3d at 1358 (quoting *Lovelady*, 544 F.3d at 1288). Here, the Court lacks sufficient information about the Defaulted Defendants to determine whether litigating in Florida would impose a meaningful burden on them. As to the other factors, in light of the Defaulted Defendants' selling trademark-infringing goods in Florida and Plaintiff's

18

presence in Florida, Florida has a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement. *Louis Vuitton*, 736 F.3d at 1358. Plaintiffs have a clear interest in obtaining convenient and effective relief in their chosen forum. *Id.* Finally, the judicial system has an interest in resolving this dispute here because the case has been pending here for more than six months. *Id.* ("The judiciary has an interest in efficiently resolving the dispute in the forum where an extensive record was established and the case was long pending."). Accordingly, the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

In sum, the exercise of jurisdiction over the nonresident Defaulted Defendants comports with constitutional due process, so this Court properly exercises personal jurisdiction over them.

> d. <u>Standing</u>

> i. *Federal Trademark Infringement Claim*

A claim for infringement of a registered trademark pursuant to 15 U.S.C. § 1114(1), Plaintiffs' claim in Count I, is available only to a "registrant" of the trademark at issue.  15 U.S.C. § 1114(1) (stating violators "shall be liable in a civil action *by the registrant* for the remedies hereinafter provided" (emphasis added)). The Lanham Act defines "registrant" to include the registrant's "legal

representatives, predecessors, successors and assigns."[4] 15 U.S.C. § 1127. Although the Eleventh Circuit has not directly addressed standing of licensees in an action under § 1114, other courts of appeals have recognized "truly exclusive licensees," meaning those with the right even to exclude the licensor from using the trademark, as having standing to bring such claims, because such licensees are deemed to be equivalent to "assignees." *See, e.g., Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003); *Fin. Inv. Co. (Bermuda) v. Geberit AG,* 165 F.3d 526, 531–32 (7th Cir. 1998); *see also Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1273 (11th Cir. 2013), (citing *Quabaug* for the proposition that "the trademarks owner or successor in interest has standing to sue.").

Here, Plaintiffs allege that Plaintiff CIC is the registered owner of the MAKE AMERICA GREAT AGAIN Trademarks, and Plaintiff DTTM is the registered owner of the TRUMP Trademarks. Compl. (Doc. 1) ¶ 45. While the registrations attached to the Complaint (Doc. 1-1) list registrants for some of the trademarks that are neither CIC nor DTTM, a search for the trademarks on the United States Patent and Trademark Office website confirms that the

---

[4] Trademarks—like other personal property—may be conveyed from the registrant to others. *Gaia Techs., Inc. v. Reconversion Techs., Inc.,* 93 F.3d 774, 777 (Fed. Cir. 1996), *amended in part on reh'g,* 104 F.3d 1296 (Fed. Cir. 1996).

TRUMP Trademarks have all been assigned to DTTM, and the MAKE AMERICA GREAT AGAIN trademarks have all been assigned to CIC.[5] Because they are the registrant or the registrant's assignee, CIC and DTTM have standing to bring trademark claims with respect to their respective trademarks.

As to the Trump Organization, Plaintiffs allege that it is "Plaintiffs' corporate office and is responsible for the enforcement of the federally registered trademarks owned by DTTM and CIC." Compl. (Doc. 1) ¶ 16. They further allege, "From the date of the creation of the first of Plaintiffs' Products to the present, the Trump Organization (and for the TRUMP Products, its authorized licensees for those products) are and have been the sole and official sources of genuine versions of Plaintiffs' Products in the United States and Florida." Compl. (Doc. 1) ¶ 19. There is no allegation that The Trump Organization is a legal representative, predecessor, successor, or assignee. *See* Compl. (Doc. 1). And, it is clear that the Trump Organization is not an exclusive licensee of products bearing the TRUMP trademark, as the

---

[5] Records of the United States Patent and Trademark Office are available at https://tmsearch.uspto.gov/search, a verified website of a public agency. Federal Rule of Evidence 201 permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it[ ] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

Complaint mentions additional authorized licensees for this trademark. Compl. (Doc. 1) ¶ 19. Although the Complaint does not foreclose the possibility that The Trump Organization is an exclusive licensee of the MAKE AMERICA GREAT AGAIN TRADEMARK (as it does not explicitly reference other licensees), there is no allegation in the Complaint from which the Court could conclude that the Trump Organization is a "truly exclusive licensee," meaning one with the right even to exclude its licensor (CIC) from using the trademark. Accordingly, based on the allegations in the Complaint, The Trump Organization lacks standing to bring a claim for trademark infringement (Count I).

### ii.  False Designation Claim

In Count II, Plaintiffs assert a claim under 15 U.S.C. § 1125(a), which Plaintiffs label "false designation of origin." Compl. (Doc. 1) p. 25. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides infringers "shall be liable in a civil action by any person[6] who believes that he or she is or is likely to be damaged by such act." Thus, non-owners may have standing to sue under

---

[6] "The term 'person' and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this chapter includes a juristic person as well as a natural person. The term 'juristic person' includes a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." 15 U.S.C. § 1127.

22

Section 1125(a). *See Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977) (holding that a nonexclusive licensee with the contractual "right to enforce the licensed trademark rights against infringers in the United States" had standing to sue under § 1125(a)).

Standing under Section 1125(a) may depend on the type of claim brought. "Section 1125(a) . . . creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 121 (2014). Plaintiffs allege that the Defendants' use of Plaintiffs' trademarks were likely to cause consumers to associate Defendants' products with Plaintiffs', creating a likelihood of confusion or mistake. Compl. (Doc. 1) ¶ 58. Thus, it appears that Plaintiffs' claim under section 1125(a) is one for false association. *See also Montgomery v. Noga*, 168 F.3d 1282, 1298 n. 25 (11th Cir. 1999) (referring to § 1125 (a)(1)(A) (false association) as "the false designation of origin prong"); *Lipscher v. LRP Pub'ns, Inc.*, 266 F.3d 1305, 1312–13 (11th Cir. 2001) (same).

The Supreme Court, in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), considered the issue of standing in a false advertisement claim (which does not appear to be the claim brought here). *Id.* at 131–34. There, the Supreme Court held that, to establish standing, a "plaintiff must allege an injury to a commercial interest in reputation or sales" which "flow[s] directly from the deception wrought by the defendant's

23

advertising; and that occurs when the deception of consumers causes them to withhold trade from plaintiffs." *Id.*

There is no binding precedent on whether the *Lexmark* standard applies to false association claims, and courts disagree on this point. *Compare Roor Int'l BV v. Kronic Underground, LLC*, No. 6:19-CV-661-WWB-GJK, 2021 WL 12303542, at *1 (M.D. Fla. July 12, 2021) (collecting cases that decided *Lexmark* does apply to false association claims) *with Travel + Leisure Resort Dev., Inc. v. Linx Legal, Inc.*, No. 6:25-CV-632-GAP-DCI, 2025 WL 2854760, at *3 n. 2 (M.D. Fla. July 8, 2025) (suggesting the opposite conclusion) *and Epic Tech, LLC v. SpinX Games Ltd.*, No. 1:22-CV-02043-SCJ, 2023 WL 6371025, at *4 (N.D. Ga. Apr. 13, 2023) ("The Court finds that *Lexmark*'s prudential standing test applies to a false advertising claim, not a false association claim."). Courts that have concluded that *Lexmark*'s test does not apply have found that a broader test applies to false association claims. *Epic Tech, LLC v. SpinX Games Ltd.*, No. 1:22-CV-02043-SCJ, 2023 WL 6371025 (N.D. Ga. Apr. 13, 2023). Namely, a plaintiff need not allege commercial harm in a false association claim, but only "that it had a trademark right in a mark, a defendant used a mark that was substantially similar to the plaintiff's mark, and the defendant's use of the mark was likely to cause consumer confusion." *Epic Tech, LLC v. SpinX Games Ltd.*, No. 1:22-CV-02043-SCJ, 2023 WL 6371025, at *7 (N.D. Ga. Apr. 13, 2023).

24

Here, the Court need not decide whether the *Lexmark* test applies, because Plaintiffs' pleading establishes standing under both *Lexmark* and the broader test.

Namely, Plaintiffs allege that Defendants' sale of counterfeit products creates a likelihood of confusion as to whether the products are genuine and, as a result, *all* Plaintiffs have suffered commercial harm to their reputation and the goodwill of their brand. Compl. (Doc. 1) ¶ 51–54. Of course, Plaintiff CIC's harm is limited to the Defendants' sale of products bearing the MAKE AMERICA GREAT AGAIN Trademarks, which CIC owns, and Plaintiff DTTM's harm is limited to the Defendants' sale of products bearing the TRUMP Trademarks, which DTTM owns. *See* Compl. (Doc. 1) ¶ 45. Finally, Plaintiff the Trump Organization, which Plaintiffs allege "is responsible for the enforcement of [both of] the federally registered trademarks owned by DTTM and CIC," Compl. (Doc. 1) ¶ 16, has standing as to both of the trademarks as its goodwill and reputation has been harmed by all counterfeit sales. *See D.H. Pace Co. v. OGD Equip. Co.*, 78 F.4th 1286, 1293 (11th Cir. 2023) (noting that, the Lanham Act does not limit remedies under 15 U.S.C. § 1125 to owners alone but, rather, extends it to "any person who believes that he or she is or is likely to be damaged" and finding that a nonexclusive licensee had standing to sue when its goodwill and company reputation were impacted by the defendants' activity).

25

All Plaintiffs have established standing to pursue Count II.

### iii.  Common Law Unfair Competition

Plaintiffs' third Count is for common law unfair competition. To determine standing on such state claims, courts look to federal law. *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332–33 (11th Cir. 2008); *see also Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 n. 4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."); *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844 (1982) (The "purpose of the Lanham Act was to codify and unify the common law of unfair competition and trademark protection").

Given that the analysis of liability for Florida common-law trademark infringement is the same as the analysis of liability for trademark infringement under 15 U.S.C. § 1114(1)(a), *Omega SA v. Individuals, Bus. Entities*, 2025 WL 2256508, at *2 (S.D. Fla. May 29, 2025)[7], as with the federal trademark infringement claim (Count I), only the registrant/assignee-Plaintiffs (CIC and DTTM) and not the Trump Organization have standing.

---

[7] *See also* Doc. 106 p. 13 (equating Count III to Count I).

26

e. Liability

*i. Federal Trademark Infringement Claim*

To establish a trademark infringement under 15 U.S.C. § 1114(1)(a), a plaintiff must show that: (1) its mark was used in commerce by the defendant without plaintiff's consent, and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007); 15 U.S.C. § 1114(1)(a).

1. Use of trademark in commerce without consent

To satisfy the first element, a plaintiff must allege that a defendant used a (1) "registered mark" (2) in commerce (3) without Plaintiff's consent. *3Lions Publg., Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031 (M.D. Fla. 2019) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008)).

First, a "registered mark" is a trademark registered in the United States Patent and Trademark Office ("USPTO"). 15 U.S.C. § 1127. Here Plaintiffs attach certificates of registration for the MAKE AMERICA GREAT AGAIN Trademarks and the TRUMP Trademarks. Compl. (Doc. 1) ¶ 45. This sufficiently alleges the trademarks are registered marks.

Second, "use in commerce" means "bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. A mark is deemed to be used in

commerce when it is placed on goods, and the goods are sold or transported in commerce. 15 U.S.C. § 1127. Here, the Complaint alleges that the Defendants placed trademarks on products and then sold those products. Compl. (Doc. 1) ¶¶ 37, 44, 46.

Finally, a defendant's use of the trademark must be without the plaintiff's consent. Here, Plaintiffs allege just that—the Defendants used the trademarks "without any authorization or license from Plaintiffs." Compl. (Doc. 1) ¶ 37.

Thus, the first prong for trademark infringement is satisfied.

### 2. Likelihood of confusion

A court must analyze seven factors in determining the likelihood of confusion between two marks:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1280–81 (11th Cir. 2020) (*quoting Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Florida Priory of the Knights Hospitallers*

28

*of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1181 (11th Cir. 2015)).

A "district court need not consider all factors in every case," and "the type of mark[, meaning its strength,] and the evidence of actual confusion are the most important" factors. *Savannah Coll.*, 983 F.3d at 1281 (*quoting Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016)). Nonetheless, allegations of actual confusion are not required to establish a likelihood of confusion. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985) ("The law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion[.]"); *see also American Auto. Ass'n v. AAA Locksmith, Inc.*, No: 2:15-cv-453-FtM-99CM, 2016 WL 1464080, *3 (M.D. Fla. Apr. 14, 2016) (explaining that "it is not necessary to prove actual confusion in order to properly allege likelihood of confusion.") (*citing Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1311 (M.D. Fla. 2013)).

<u>Strength of the Marks</u>. Starting with the strength of the mark, courts examine the conceptual strength of a mark, which is the potential of a mark to aid in customer recognition. *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 949 (11th Cir. 2023). Generally, marks are strongest when the trademarked word or phrase bears no relationship to the product; this is called an "arbitrary" mark (for example "Sun" to describe a banking service). *Frehling*

*Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The strength of a mark is also measured by the degree to which third parties make use of the mark, with less use suggesting a stronger mark. *Id.* at 1336 (citations omitted).

Here, the trademark MAKE AMERICA GREAT AGAIN appears "arbitrary" (the strongest category) as it is not inherently related to Plaintiffs' businesses.

Meanwhile, the trademark TRUMP is a personal name and, therefore, is not considered to be "inherently distinctive." *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522–23 (11th Cir. 1991). Nonetheless, a personal name mark may be strong when a plaintiff establishes it has a secondary meaning, which exists when consumers connect the mark with the product sold. *AmBrit, Inc. v. Kraft, Inc.*, 812 F. 2d 1531, 1536 n.14 (11th Cir. 1986). In determining whether a mark has a secondary meaning, the court considers four factors: "(1) the length and nature of the name's use, (2) the nature and extent of advertising and promotion of the name, (3) the efforts of the proprietor to promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the proprietor's product or service." *Tana v. Dantanna's*, 611 F. 3d 767, 776 (11th Cir. 2010). Here, Plaintiffs have been using the Trump name on products since 2013. Compl. (Doc. 1) p. 8. They purport to "have

30

expended substantial time, money, and other resources in developing, advertising, and otherwise promoting [the] Trademarks." Compl. (Doc. 1) ¶ 23. As a result, "Plaintiffs' Products are exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs." Compl. (Doc. 1) ¶ 23. These allegations establish that the TRUMP trademark has a secondary meaning and, therefore, is a "relatively strong mark." *Dantanna's*, 611 F. 3d at 776.

Similarity Factors. In determining the likelihood of confusion, courts also consider similarity of the infringed and infringing marks and the goods on which they are offered, similarity of the actual sales methods used by the holders of the marks, and similarity of advertising methods. *Savannah Coll. of Art & Design*, 983 F.3d at 1280–81.

Here, Plaintiffs plead that the Defendants design online marketplace accounts so that they appear to be selling genuine versions of Plaintiffs' products. Compl. (Doc. 1) ¶ 5. The Defendants, like Plaintiffs, sell the trademarked products online. Compl. (Doc. 1) ¶ 19. Like Plaintiffs' stores, the Defaulted Defendants' stores "look sophisticated and accept payment in U.S. dollars via credit cards and PayPal." Compl. (Doc. 1) ¶ 26. Finally, the infringing products bear the same design elements as some of Plaintiffs' products. Compl. (Doc. 1) ¶ 37.

Thus, these factors weigh in favor of finding there is a likelihood of confusion.

Remaining Factors. To determine whether there is a likelihood of confusion, district courts may also look to the intent of the alleged infringer to misappropriate the proprietor's good will and the existence and extent of actual confusion in the consuming public. *Savannah Coll. of Art & Design, Inc.*, 983 F.3d at 1280–81.

Here, Plaintiffs plead that the Defendants act knowingly and willfully in their infringement, going to great lengths to conceal their identities through use of fictitious names and addresses. Compl. (Doc. 1) ¶¶ 29, 37. They plead the Defendants' actions have in fact caused confusion among customers. Compl. (Doc. 1) ¶ 39.

Conclusion. Accepting the well-pleaded allegations as true, they show that the trademarks are strong, the infringing products and sales methods used by the Defendants are substantially similar to those used by Plaintiffs, that the Defendants act with intent, and that customers are confused by the Defendants' use of the trademarks. Thus, I find Plaintiffs plead a likelihood of confusion.

Given that this is the final element required for a claim of federal trademark infringement, I recommend the Court enter judgment in favor of Plaintiff DTTM and against the Defaulted Defendants that used the TRUMP

32

Trademark, and in favor of Plaintiff CIC and against the Defaulted Defendants that used the MAKE AMERICA GREAT AGAIN Trademark on Count I. These specific proposed judgments are identified in the Conclusion.

*ii.   False designation of origin under 15 U.S.C. § 1125(a)*

To state a claim for false designation of origin under 15 U.S.C. § 1125(a). "a plaintiff must show: (1) that the plaintiff has enforceable trademark rights [(meaning that rights to enforce the trademark, not necessarily that they own the trademark)] in the mark . . .  and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007) (internal quotation and citation omitted). Unlike § 1114, § 1125(a) protects both registered and unregistered marks. *Tana v. Dantanna's*, 611 F.3d at 773. The likelihood-of-confusion analysis under § 1125(a) is the same seven-factor analysis as it was under § 1114. *Custom Mfg.*, 508 F.3d at 648.

The Eleventh Circuit has recognized that "[t]he same set of facts enabling [a plaintiff] to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125 . . .because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n. 3 (11th Cir. 1991) ("[T]he same facts support a cause of

action for unfair competition as for trademark infringement; if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either."). While a plaintiff may bring both claims, as Plaintiffs recognize here, a plaintiff may not recover damages on both claims. *St. Luke's*, 573 F.3d at 1203.

Thus, for the reasons stated in the analysis of the claim under Section 1114(a) above, and because all Plaintiffs have established standing to bring this claim, Plaintiffs have plausibly alleged both elements.

### iii.   Common law unfair competition

"The Florida Trademark Act . . . explicitly preserves common law rights in marks acquired in good faith."[8] *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1023 (11th Cir. 1989) (citations omitted). The legal standard for federal trademark and unfair competition, and for common law trademark infringement, are essentially the same. *See id.* at 1025–26 and n. 14. Florida law requires that a plaintiff bringing an unfair competition claim establish deceptive or fraudulent conduct of a competitor and likelihood of customer confusion. *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.,* 785 F.2d 897, 914 (11th Cir. 1986) (*citing Stagg Shop of Miami, Inc. v.*

---

[8] The Lanham Act generally does not preempt state regulation of trademarks, whether statutory or at common law. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910 (7th Cir. 2007). As discussed above, however, Plaintiffs recognize that recovery is only appropriate as to one claim, not both.

34

*Moss,* 120 So.2d 39 (Fla. 2d DCA 1960)); *see also Professional Golfers Ass'n v. Banks Life & Casualty Co.,* 514 F.2d 665, 671 (5th Cir. 1975) ("[L]ikelihood of consumer confusion and passing off one's goods or services as those of another constitute the gravamen of the action" under Florida case law.).

### 1.  Deceptive or fraudulent conduct of a competitor

To satisfy this element, a plaintiff must allege that (1) the defendant is a competitor, meaning that the defendant competes with the plaintiff for a common pool of customers, and (2) that the defendant acted deceptively or fraudulently. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007).

Starting with the first prong, one way in which a plaintiff shows that a defendant is competing with the plaintiff for a common pool of customers is when the defendant is "palming off," where a business mimics trademarks or brand identity to deceive consumers and exploit another brand's reputation. *See AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1167 (S.D. Fla. 2005). Here, Plaintiffs plead that the Defendants design online marketplace accounts so that they appear to be selling genuine versions of Plaintiffs' products. Compl. (Doc. 1) ¶ 5. And, the Defendants' infringing products bear the same design elements as some of Plaintiffs' products. Compl. (Doc. 1) ¶ 37.

Plaintiffs also allege the Defendants acted deceptively, as their actions were undertaken knowingly and intending to deceive the consuming public into believing they were purchasing Plaintiff's products, and as the Defendants tried to avoid liability by concealing their identities. Compl. (Doc. 1) ¶¶ 57, 60, 61.

Accordingly, Plaintiffs have shown the Defaulted Defendants engaged in deceptive or fraudulent conduct as a competitor.

## 2. Likelihood of consumer confusion

To satisfy this element, a plaintiff must allege that a defendant's marketing practice creates a likelihood of consumer confusion. *Third Party Verification, Inc.*, 492 F. Supp. 2d at 1324. This can be shown through actions that would cause consumers to mistakenly believe they are purchasing a plaintiff's product based on a defendant's marketing. *Glob. Tel*Link Corp. v. Scott*, 652 F. Supp. 2d 1240, 1250 (M.D. Fla. 2009).

Here, Plaintiffs allege that the Defendants design online marketplace accounts so that they appear to be selling genuine versions of Plaintiffs' products. Compl. (Doc. 1) ¶ 5. This is sufficient to establish a likelihood of customer confusion. *Third Party Verification, Inc.*, 492 F. Supp. 2d at 1325 (sufficient to allege misleading advertisements).

Because Plaintiffs' uncontested allegations establish that the Defaulted Defendants are each competitors who act with deception and fraud in a way

36

that is likely to confuse the public, Plaintiffs CIC and DTTM (the two Plaintiffs with standing to make this claim) successfully make a claim for common law unfair competition with respect to each's trademark (TRUMP as to Plaintiff DTTM, and MAKE AMERICA GREAT AGAIN as to Plaintiff CIC). Thus, I recommend the Court enter judgment in favor of Plaintiff CIC and against the Defaulted Defendants that use the MAKE AMERICA GREAT AGAIN Trademark and in favor of Plaintiff DTTM and against the Defaulted Defendants that use the TRUMP Trademark on Count III. These specific Defaulted Defendants are identified in the Conclusion.

### f.  Damages

Because the well-pleaded facts in the Complaint support a finding of liability against the Defaulted Defendants on Counts One, Two, and Three, the Court next turns to damages. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Here, Plaintiffs seek both injunctive and monetary relief, including a permanent injunction and statutory damages under 15 U.S.C. § 1117. Doc. 106 pp. 13–24; Compl. (Doc. 1) pp. 28—31.

### i.  *Injunctive relief*

First, Plaintiffs seek injunctive relief. Compl. (Doc. 1) p. 28.

Pursuant to the Lanham Act, a district court can issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. §

37

1116(a). "Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark[.]" *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). Injunctive relief is available via default judgment. *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The d]efendants' failure to respond or otherwise appear makes it difficult for [the p]laintiff to prevent further infringement absent an injunction.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

Starting with the first requirement (irreparable injury), in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate

38

sales."). Here, as the Court has already analyzed, Plaintiffs have established that the Defaulted Defendants' actions will likely confuse customers. *See supra* pp. 28–32. Thus, Plaintiffs have established that they have suffered irreparable injury.

Next, Plaintiffs have no adequate remedy at law so long as the Defaulted Defendants continue to sell the infringing products because Plaintiffs cannot control the quality of what appears to be its products in the marketplace. *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[T]here is no adequate remedy at law for the injury caused by a defendant's continuing infringement.") (citation omitted).

As to the balance of hardships, Plaintiffs will continue to suffer harm, *e.g.*, lost sales and goodwill, if the Defaulted Defendants are not permanently enjoined from the unauthorized use of the trademarks. On the other hand, courts have found that defaulting defendants should be considered to face "no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290–91 (S.D. Fla. 2016); *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1262 (S.D. Fla. 2016); *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010) ("In contrast, the infringing defendant had no right to use the mark, and therefore could suffer no legitimate hardship

39

by being forced to stop that which it had no right to do.") (citing *Gaffigan v. Does,* 689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009)).

Finally, a permanent injunction against the Defaulted Defendants' unauthorized use of the trademarks is the best means to protect the public from future confusion. *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1209 (11th Cir. 2008). Accordingly, a permanent injunction against the Defaulted Defendants' unauthorized use of the trademarks would serve the public's interest. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace").

Thus, all four factors support a permanent injunction.

Here, the uncontested allegations in the Complaint establish that the Defaulted Defendants have created an Internet-based scheme through which they advertise and sell counterfeit products bearing Plaintiffs' trademarks. Compl. (Doc. 1). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop the Defaulted Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould

[sic] each decree to the necessities of the particular case." (citation and internal quotation marks omitted)).

Injunctive relief in trademark infringement cases may include not only prohibiting a defendant's unlawful activities, but also shutting down the means through which they conduct their unlawful scheme. *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). Thus, in trademark infringement actions, courts in this district have authorized the plaintiff to request any e-mail service provider permanently suspend the e-mail addresses used by the defendants to sell the infringing goods, required marketplace administrators to disable commercial accounts being used by the defendants, required the marketplace administrator to permanently remove any and all listings and associated images of infringing goods, requiring the defendant to immediately cease fulfillment of goods bearing the trademarks in the defendant's inventory, possession, custody, or control, and requiring the defendant to surrender those goods to the plaintiff, "such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods." *Chanel, Inc. v. 21948352*, 769 F. Supp. 3d 1299, 1308–09 (S.D. Fla. 2025).

In issuing injunctive relief, the Court must ensure that the scope of the injunction is appropriately tailored to the extent of the violation established.

41

*See Benning v. Comm'r, Ga. Dep't of Corr.*, 71 F.4th 1324, 1339 (11th Cir. 2023) ("The scope of injunctive relief is dictated by the extent of the violation established.") (*quoting Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Accordingly, courts may fashion injunctive relief to eliminate the means by which defendants conduct their unlawful activities. *Chanel, Inc.*, 240 F. Supp. 3d at 1291 (ordering defaulted defendants to disable infringing domain names in a trademark infringement action).

Here, the District Court has already fashioned injunctive relief in granting the motion for a preliminary injunction. *See* Doc. 100 pp. 9–15. As the Eleventh Circuit has recognized, "[t]he standard for entering a preliminary injunction echoes the standard for entering a permanent injunction." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1245 (11th Cir. 2020). Here, no Defaulted Defendant has appeared to challenge the District Court's findings supporting the injunctive relief awarded in the preliminary injunction. Thus, because the District Court has already decided that the requested relief is appropriate under the controlling standard, and because nothing new has been presented to challenge that finding, the preliminary injunction should be converted into a permanent injunction.

### ii.  Statutory damages under 15 U.S.C. § 1117(c)

In a case involving the use of counterfeit marks in connection with the sale, offer, or distribution of goods, [9] 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, should a court find a defendants actions to be willful, it may impose damages up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). "Other than providing a range amount . . . the statute provides little guidance in determining the damage amount." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1221 (S.D. Fla. 2004).

Here, Plaintiffs have elected to recover an award of statutory damages as to Count I of the Complaint, [10] and they seek an amount of $200,000 (total, regardless of the number of marks or types of goods infringed) against each Defaulted Defendant. Doc. 106 p. 22.

---

[9] Thus, statutory damages arising under 15 U.S.C. § 1117(c) are appropriate under Count I, *Daimler Truck AG v. Partnerships & Unincorporated Associations Identified on Schedule A*, 794 F. Supp. 3d 1300, 1306 (S.D. Fla. 2025), and Count II, *RooR Int'l BV v. IBTS LLC*, No. 618CV1726ORL37EJK, 2020 WL 3265970, at *3 (M.D. Fla. Apr. 6, 2020).

[10] Plaintiffs acknowledge that damages for their two other claims are encompassed within their requested damages pursuant to § 1117(c), and Plaintiffs seeks no additional damages based on those claims. Doc. 106 p. 24.

"[A]n award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016). In construing other statutory damages provisions closely analogous to the one in the Lanham Act, the Eleventh Circuit has explained that a district court has very "broad discretion" to select an award "within [the] set limits" of the "statutory yardstick," "consider[ing] both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). Finally, "[n]othing in section 1117(c) nor precedent suggests that statutory damages must be related to actual damages; instead, all signs point toward the opposite conclusion." *Top Tobacco, L.P. v. Star Importers & Wholesalers, Inc.*, 135 F.4th 1344, 1350 (11th Cir. 2025). Ultimately, an "award should be sufficient to deter [the defendant] and others from continuing **t**o counterfeit or otherwise infringe [the plaintiff's] trademarks, compensate [the plaintiff], and punish [the defendants]." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263–64 (S.D. Fla. 2016).

The Eleventh Circuit recently affirmed a jury award of $123,000 in damages per mark when the jury found that the infringement was not willful, and even though the award bore no relationship to the damages suffered by the plaintiffs, because the award was "within the range of statutory damages

44

permitted for nonwillful infringement under section 1117(c)(1)." *Top Tobacco, L.P. v. Star Importers & Wholesalers, Inc.*, 135 F.4th 1344, 1349 (11th Cir. 2025). Courts within Florida have approved much higher awards for willful infringement. *Guangzhou Xinge Trading Co. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 23-60749-CIV, 2024 WL 2797363, at *5 (S.D. Fla. Jan. 3, 2024) (collecting cases in which courts in the Southern District of Florida have awarded $1,000,000 per trademark).

As previously discussed, the allegations in the Complaint and the evidence in the record establish the Defaulted Defendants each copied one or more of Plaintiffs' trademarks. The Defaulted Defendants have conceded by default Plaintiffs' allegations of willfulness. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (concluding that a court may infer willfulness from the defendants' default). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure each Defaulted Defendant does not continue its intentional and willful counterfeiting activities. Here, Plaintiffs' total requested amount of $200,000 against each Defaulted Defendant is sufficient to deter defendants and others from continuing to counterfeit or otherwise infringe plaintiffs' trademarks, compensate plaintiffs, and punish defendants. *See Guangzhou Xinge Trading Co. v. Individuals,*

45

*Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 23-60749-CIV, 2024 WL 2797363, at \*5 (S.D. Fla. Jan. 3, 2024) (awarding this amount against a defaulting defendant).

The \$200,000 (total) from each Defaulted Defendant should be awarded to the Plaintiff whose trademark the Defaulted Defendant infringed and, if the Defaulted Defendant violated both marks, should be split between the two relevant Plaintiffs. Again, the TRUMP Trademarks have all been assigned to DTTM, and the MAKE AMERICA GREAT AGAIN trademarks have all been assigned to CIC. Based on the exhibits attached to the motion for final default judgment, which show whether each Defaulted Defendant infringed DTTM's trademark, CIC's trademark, or both, I recommend the following awards:

| From Defaulted Defendant | To Plaintiff | Amount | Evidence at |
|---|---|---|---|
| AWARTEN INTERNATIONAL | CIC | \$100,000 | Doc. 106-3 pp. 3–9 |
| AWARTEN INTERNATIONAL | DTTM | \$100,000 | Doc. 106-3 pp. 3–9 |
| Baoding Solin Shoes And Hats Sales Co., Ltd. | CIC | \$200,000 | Doc. 106-3 pp. 11–21 |
| Hebei Dishixiao Gloves Manufacture Co., Ltd. | CIC | \$100,000 | Doc. 106-3 pp. 24–68 |
| Hebei Dishixiao Gloves Manufacture Co., Ltd. | DTTM | \$100,000 | Doc. 106-3 pp. 24–68 |
| Hebei Qianxian Trading Co., Ltd | CIC | \$200,000 | Doc. 106-3 pp. 70–79 |
| QUICK PUNCH | CIC | \$100,000 | Doc. 106-3 pp. 81–87 |
| QUICK PUNCH | DTTM | \$100,000 | Doc. 106-3 pp. 81–87 |

| Shenzhen Yilu Youni Technology Co., Ltd. | CIC | $200,000 | Doc. 106-3 pp. 89–99 |
|---|---|---|---|
| Wenzhou Tisdan Industry And Trade Co., Ltd. | CIC | $100,000 | Doc. 106-3 pp. 101–111 |
| Wenzhou Tisdan Industry And Trade Co., Ltd. | DTTM | $100,000 | Doc. 106-3 pp. 101–111 |
| Yiwu Lianjin Electronic Commerce Co., Ltd. | CIC | $200,000 | Doc. 106-3 pp. 113–123 |
| Yiwu Shangyi Garment Co., Ltd | CIC | $200,000 | Doc. 106-3 pp. 125–135 |
| Yiwu Tooomo Import & Export Co., Ltd. | CIC | $100,000 | Doc. 106-3 pp. 137–145 |
| Yiwu Tooomo Import & Export Co., Ltd. | DTTM | $100,000 | Doc. 106-3 pp. 137–145 |
| Dream ReaLm Store | CIC | $200,000 | Doc. 106-3 pp. 147–158 |
| Global Cool Car Store | CIC | $200,000 | Doc. 106-3 pp. 160–167 |
| Hot Wholesale Store | CIC | $200,000 | Doc. 106-3 pp. 168–177 |
| Jemma Cosplay Costume Store | CIC | $100,000 | Doc. 106-3 pp. 179–188 |
| Jemma Cosplay Costume Store | DTTM | $100,000 | Doc. 106-3 pp. 179–188 |
| Jemma Cosplay Store | CIC | $100,000 | Doc. 106-3 pp. 190–198 |
| Jemma Cosplay Store | DTTM | $100,000 | Doc. 106-3 pp. 190–198 |
| PRO Club Global Store | CIC | $200,000 | Doc. 106-3 pp. 200–221 |
| Shop1104492693 Store | CIC | $100,000 | Doc. 106-3 pp. 223–236 |
| Shop1104492693 Store | DTTM | $100,000 | Doc. 106-3 pp. 223–236 |
| Top Daily Necessities Store | CIC | $200,000 | Doc. 106-3 pp. 238–248 |

| Wenkun0706 Store | CIC | $100,000 | Doc. 106-3 pp. 250–261 |
|---|---|---|---|
| Wenkun0706 Store | DTTM | $100,000 | Doc. 106-3 pp. 250–261 |
| babynice126 | CIC | $100,000 | Doc. 106-3 pp. 263–270 |
| babynice126 | DTTM | $100,000 | Doc. 106-3 pp. 263–270 |
| cup0830 | CIC | $100,000 | Doc. 106-3 pp. 271–276 |
| cup0830 | DTTM | $100,000 | Doc. 106-3 pp. 271–276 |
| daye05 | CIC | $100,000 | Doc. 106-3 pp. 277–284 |
| daye05 | DTTM | $100,000 | Doc. 106-3 pp. 277–284 |
| diao05 | CIC | $100,000 | Doc. 106-3 pp. 286–293 |
| diao05 | DTTM | $100,000 | Doc. 106-3 pp. 286–293 |
| gardenhome01 | CIC | $200,000 | Doc. 106-3 pp. 295–299 |
| goodlifefactory | CIC | $200,000 | Doc. 106-3 pp. 301–307 |
| homemarket19 | CIC | $200,000 | Doc. 106-3 pp. 309–315 |
| killy1688 | CIC | $200,000 | Doc. 106-3 pp. 317–323 |
| mengyang10 | CIC | $100,000 | Doc. 106-3 pp. 325–331 |
| mengyang10 | DTTM | $100,000 | Doc. 106-3 pp. 325–331 |
| pang05 | CIC | $100,000 | Doc. 106-3 pp. 333–340 |
| pang05 | DTTM | $100,000 | Doc. 106-3 pp. 333–340 |
| ren03 | CIC | $100,000 | Doc. 106-3 pp. 342–359 |
| ren03 | DTTM | $100,000 | Doc. 106-3 pp. 342–359 |

48

| saraha_store | CIC | $100,000 | Doc. 106-3 pp. 361–370 |
|---|---|---|---|
| saraha_store | DTTM | $100,000 | Doc. 106-3 pp. 361–370 |
| smyy6 | CIC | $100,000 | Doc. 106-3 pp. 372–380 |
| smyy6 | DTTM | $100,000 | Doc. 106-3 pp. 372–380 |
| smyy888 | CIC | $100,000 | Doc. 106-3 pp. 382–388 |
| smyy888 | DTTM | $100,000 | Doc. 106-3 pp. 382–388 |
| trendy_top_store | CIC | $100,000 | Doc. 106-3 pp. 390–395 |
| trendy_top_store | DTTM | $100,000 | Doc. 106-3 pp. 390–395 |
| zxdingzhi | CIC | $100,000 | Doc. 106-3 pp. 396–402 |
| zxdingzhi | DTTM | $100,000 | Doc. 106-3 pp. 396–402 |
| 2021-andy-01 | CIC | $100,000 | Doc. 106-3 pp. 404–415 |
| 2021-andy-01 | DTTM | $100,000 | Doc. 106-3 pp. 404–415 |
| blingjellyfish | CIC | $100,000 | Doc. 106-3 pp. 417–427 |
| blingjellyfish | DTTM | $100,000 | Doc. 106-3 pp. 417–427 |
| dillmurlati | CIC | $100,000 | Doc. 106-3 pp. 429–457 |
| dillmurlati | DTTM | $100,000 | Doc. 106-3 pp. 429–457 |
| glo56junry51 | CIC | $100,000 | Doc. 106-3 pp. 459–473 |
| glo56junry51 | DTTM | $100,000 | Doc. 106-3 pp. 459–473 |
| qinchen77View profile (qinchen77) | CIC | $200,000 | Doc. 106-3 pp. 475–479 |
| yiwushichangxiaf-0 | CIC | $100,000 | Doc. 106-3 pp. 481–515 |

49

| yiwushichangxiaf-0 | DTTM | $100,000 | Doc. 106-3 pp. 481–504 |
|---|---|---|---|
| Zhengkai Zhu (yiwushilianliugongch-0) | CIC | $100,000 | Doc. 106-3 pp. 506–516 |
| Zhengkai Zhu (yiwushilianliugongch-0) | DTTM | $100,000 | Doc. 106-3 pp. 506–516 |
| Zhonghao Zhu, (yiwushizhuihedianzi0) | DTTM | $100,000 | Doc. 106-3 pp. 517–539 |
| Zhonghao Zhu, (yiwushizhuihedianzi0) | CIC | $100,000 | Doc. 106-3 pp. 517–539 |
| HaiYenHandmadeVN | DTTM | $200,000 | Doc. 106-3 p. 541–Doc. 106-4 pp. 2–13 |
| KENTGIFT | DTTM | $200,000 | Doc. 106-4 pp. 15–32 |
| CJLSD | CIC | $200,000 | Doc. 106-4 pp. 34–51 |
| Eachnice | CIC | $200,000 | Doc. 106-4 pp. 53–59 |
| FuLiuFuLiu | DTTM | $200,000 | Doc. 106-4 pp. 61–88 |
| Gaga Clothing | CIC | $200,000 | Doc. 106-4 pp. 88–110 |
| Gardening Tools Store | DTTM | $100,000 | Doc. 106-4 pp. 112–141 |
| Gardening Tools Store | CIC | $100,000 | Doc. 106-4 pp. 112–141 |
| GuXianMing | CIC | $200,000 | Doc. 106-4 pp. 143–170 |
| HGT-TECH | CIC | $200,000 | Doc. 106-4 pp. 172–202 |
| Jigreat | DTTM | $100,000 | Doc. 106-4 pp. 203–209 |
| Jigreat | CIC | $100,000 | Doc. 106-4 pp. 203–209 |
| Koninya | DTTM | $100,000 | Doc. 106-4 pp. 211–229 |

| Koninya | CIC | $100,000 | Doc. 106-4 pp. 211–229 |
|---|---|---|---|
| L8502-LXYB Clothing | CIC | $200,000 | Doc. 106-4 pp. 231–258 |
| Leemo | DTTM | $100,000 | Doc. 106-4 pp. 260–271 |
| Leemo | CIC | $100,000 | Doc. 106-4 pp. 260–271 |
| LLFCLL | DTTM | $100,000 | Doc. 106-4 pp. 273–280 |
| LLFCLL | CIC | $100,000 | Doc. 106-4 pp. 273–280 |
| Magic Pocket | CIC | $200,000 | Doc. 106-4 pp. 282–324 |
| Novasphere | CIC | $200,000 | Doc. 106-4 pp. 326–332 |
| Quickwittc | CIC | $200,000 | Doc. 106-4 pp. 334–340 |
| tian sheng yi an | CIC | $200,000 | Doc. 106-4 p. 342–Doc. 106-5 p. 24 |
| TJSHOP | CIC | $200,000 | Doc. 106-5 pp. 26–31 |
| Uncle Nee's Store | DTTM | $100,000 | Doc. 106-5 pp. 33–54 |
| Uncle Nee's Store | CIC | $100,000 | Doc. 106-5 pp. 33–54 |
| Xi an Shenghe Jurui Technology | DTTM | $100,000 | Doc. 106-5 pp. 56–61 |
| Xi an Shenghe Jurui Technology | CIC | $100,000 | Doc. 106-5 pp. 56–61 |
| Xunxing Technology | CIC | $200,000 | Doc. 106-5 pp. 63–68 |
| yali | DTTM | $100,000 | Doc. 106-5 pp. 70–91 |
| yali | CIC | $100,000 | Doc. 106-5 pp. 70–91 |
| ZYDZ Store | CIC | $200,000 | Doc. 106-5 pp. 93–104 |

| | | | |
|---|---|---|---|
| Drybrownfiercegj | DTTM | $100,000 | Doc. 106-5 pp. 106–115 |
| Drybrownfiercegj | CIC | $100,000 | Doc. 106-5 pp. 106–115 |
| Etzel | DTTM | $100,000 | Doc. 106-5 pp. 117–126 |
| Etzel | CIC | $100,000 | Doc. 106-5 pp. 117–126 |
| Fighting123 | DTTM | $100,000 | Doc. 106-5 pp. 128–134 |
| Fighting123 | CIC | $100,000 | Doc. 106-5 pp. 128–134 |
| louxuqongliu | DTTM | $100,000 | Doc. 106-5 pp. 136–146 |
| louxuqongliu | CIC | $100,000 | Doc. 106-5 pp. 136–146 |
| sunshine-cheongsam | DTTM | $100,000 | Doc. 106-5 pp. 148–157 |
| sunshine-cheongsam | CIC | $100,000 | Doc. 106-5 pp. 148–157 |
| yangaimei | DTTM | $100,000 | Doc. 106-5 pp.159–168 |
| yangaimei | CIC | $100,000 | Doc. 106-5 pp.159–168 |

## V. <u>Conclusion</u>

For the reasons stated, I respectfully RECOMMEND that the court GRANT IN PART Plaintiffs' Motion for Default Judgment (Doc. 106), and:

(1)     Enter judgment in favor of Plaintiff DTTM and against Defendants AWARTEN INTERNATIONAL, Hebei Dishixiao Gloves Manufacture Co., Ltd., QUICK PUNCH, Wenzhou Tisdan Industry And Trade Co., Ltd., Yiwu Tooomo Import & Export Co., Ltd., Jemma Cosplay Costume Store, Jemma Cosplay Store, Shop1104492693 Store, Wenkun0706 Store, babynice126,

cup0830, daye05, diao05, mengyang10, pang05, ren03, saraha_store, smyy6, smyy888, trendy_top_store, zxdingzhi, 2021-andy-01, blingjellyfish, dillmurlati, glo56junry51, yiwushichangxiaf-0, Zhengkai Zhu (yiwushilianliugongch-0), Zhonghao Zhu, (yiwushizhuihedianzi0), HaiYenHandmadeVN, KENTGIFT, FuLiuFuLiu, Gardening Tools Store, Jigreat, Koninya, Leemo, LLFCLL, Uncle Nee's Store, Xi an Shenghe Jurui Technology, yali, Drybrownfiercegj, Etzel, Fighting123, louxuqongliu, sunshine-cheongsam, and yangaimei on Counts I, II, and III.

(2)     Enter judgment in favor of Plaintiff CIC and against the Defendants AWARTEN INTERNATIONAL, Baoding Solin Shoes And Hats Sales Co., Ltd., Hebei Dishixiao Gloves Manufacture Co., Ltd., Hebei Qianxian Trading Co., Ltd, QUICK PUNCH, Shenzhen Yilu Youni Technology Co., Ltd., Wenzhou Tisdan Industry And Trade Co., Ltd., Yiwu Lianjin Electronic Commerce Co., Ltd., Yiwu Shangyi Garment Co., Ltd, Yiwu Tooomo Import & Export Co., Ltd., Dream ReaLm Store, Global Cool Car Store, Hot Wholesale Store, Jemma Cosplay Costume Store, Jemma Cosplay Store, PRO Club Global Store, Shop1104492693 Store, Top Daily Necessities Store, Wenkun0706 Store, babynice126, cup0830, daye05, diao05, gardenhome01, goodlifefactory, homemarket19, killy1688, mengyang10, pang05, ren03, saraha_store, smyy6, smyy888, trendy_top_store, zxdingzhi, 2021-andy-01, blingjellyfish, dillmurlati, glo56junry51, qinchen77View profile (qinchen77),

53

yiwushichangxiaf-0, Zhengkai Zhu (yiwushilianliugongch-0), Zhonghao Zhu, (yiwushizhuihedianzi0), CJLSD, Eachnice, Gaga Clothing, Gardening Tools Store, GuXianMing, HGT-TECH, Jigreat, Koninya, L8502-LXYB Clothing, Leemo, LLFCLL, Magic Pocket, Novasphere, Quickwittc, tian sheng yi an, TJSHOP, Uncle Nee's Store, Xi an Shenghe Jurui Technology, Xunxing Technology, yali, ZYDZ Store, Drybrownfiercegj, Etzel, Fighting123, louxuqongliu, sunshine-cheongsam, and yangaimei on Counts I, II, and III

(3)     Enter judgment in favor of Plaintiff the Trump Organization and against all Defaulted Defendants on Count II.

(4)     Convert the injunctive relief awarded in the preliminary injunction to a permanent injunction;

(5)     Award Plaintiffs CIC and DTTM statutory damages pursuant to 15 U.S.C. § 1117, as specified on the table on pages 46 to 52, *supra*; and

(6)     Retain jurisdiction to enforce the judgment and permanent injunction.

Submitted for the District Court's consideration on July 1, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.